[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 376.]

THE STATE EX REL. BAKER, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Baker v. Indus. Comm.*, 2000-Ohio-168.]

*Workers' compensation—Claimant who leaves former position of employment for a new position does not forfeit temporary total disability compensation eligibility.*

When a claimant who is medically released to return to work following an industrial injury leaves his or her former position of employment to accept another position of employment, the claimant is eligible to receive temporary total disability compensation pursuant to R.C. 4123.56(A) should the claimant reaggravate the original industrial injury while working at his or her new job.

(No. 98-556—Submitted May 9, 2000—Decided August 9, 2000.)

APPEAL from the Court of Appeals for Franklin County, No. 96APD10-1283.

ON RECONSIDERATION.

———————————

{¶ 1} On July 27, 1989, appellant, Paul W. Baker, suffered an industrial injury to his left knee during his employment as a general laborer for appellee, Stahl-Wooster Division, A Scott Fetzer Company ("Stahl-Wooster"). As a result of his industrial injury, the Industrial Commission allowed Baker's claim for a lateral tear of the meniscus of the left knee, and Baker subsequently missed work due to arthroscopic knee surgeries that were performed on January 9, 1990 and May 4, 1990. Baker received temporary total disability compensation ("TTC") from January 9, 1990 to July 15, 1990.

{¶ 2} On July 15, 1990, Baker's treating physician, James J. Heintz, M.D., released Baker to resume full-time work, restricted to light duty. The following day, Baker returned to Stahl-Wooster and, that same day, signed a termination

notice stating that he had "accepted other employment." Thereafter, Baker began his new job as a truck mechanic with Truck Stops of America ("Truck Stops"). On September 24, 1990, Baker left his position with Truck Stops, allegedly due to his original industrial injury.

{¶ 3} After examinations by Dr. T. Kenneth Krutky and Dr. Heintz, Baker filed a request for a further allowance and for additional TTC. Specifically, Baker requested TTC from September 24, 1990 through an estimated return-to-work date of May 16, 1991. After considering Baker's request, a commission district hearing officer ("DHO") issued an order granting Baker TTC for the requested time period. After a timely appeal of the DHO decision by Stahl-Wooster, the Canton Regional Board of Review agreed with Stahl-Wooster, and denied TTC to Baker. The regional board denied TTC on the basis that Baker had voluntarily terminated his employment with Stahl-Wooster. Baker then timely appealed the board's decision to the Industrial Commission. On behalf of the commission, two staff hearing officers denied Baker's appeal, thereby agreeing with the board's decision.[1] The commission's decision to deny Baker's appeal was based on a finding that Baker had voluntarily abandoned his position of employment with Stahl-Wooster.

{¶ 4} On October 2, 1996, Baker filed a complaint in mandamus in the Franklin County Court of Appeals, alleging that the commission had abused its discretion in denying his TTC request. The court of appeals disagreed and denied the writ. From the judgment of the court of appeals, Baker appealed to this court. On January 26, 2000, we issued our first decision in this case, *State ex rel. Baker v. Indus. Comm.* (2000), 87 Ohio St.3d 561, 722 N.E.2d 67 ("*Baker I*"). In a *per curiam* opinion, we held that under the principles of *State ex rel. McGraw v. Indus. Comm.* (1990), 56 Ohio St.3d 137, 564 N.E.2d 695, and *State ex rel. Jones &*

---

1. The staff hearing officers adjusted the closing date of the period under consideration for TTC from May 16, 1991 to April 14, 1991, because Baker was receiving living-maintenance payments pursuant to R.C. 4121.63 during the period of April 15, 1991 through November 14, 1991.

*Laughlin Steel Corp. v. Indus. Comm.* (1985), 29 Ohio App.3d 145, 29 OBR 162, 504 N.E.2d 451, Baker was not eligible for TTC because he had voluntarily abandoned his employment with Stahl-Wooster by accepting new employment with Truck Stops.

**{¶ 5}** In response to our initial decision, Baker filed a motion for reconsideration. Baker's request for reconsideration was joined by *amici curiae* Ohio AFL-CIO, Fraternal Order of Police of Ohio, Inc., Ohio Academy of Trial Lawyers, Ohio Conference of Teamsters, Ohio State Building and Construction Trades Council, Northwestern Ohio Building and Construction Trades Council, and the Ohio Education Association. Appellees, Industrial Commission and Stahl-Wooster, filed memoranda opposing Baker's motion for reconsideration, and appellees' opposition was joined by *amici curiae* Ohio Self-Insurers Association and Ohio Manufacturers Association.

**{¶ 6}** On March 15, 2000, we granted Baker's motion for reconsideration and issued an order permitting the parties to submit supplemental briefs. We also ordered that the case be set for oral argument.

**{¶ 7}** The cause is now before the court as an appeal of right and on rehearing.

———————

*Stewart R. Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy*; and *M. Blake Stone,* for appellant.

*Betty D. Montgomery*, Attorney General, and *C. Bradley Howenstein*, Assistant Attorney General, for appellee Industrial Commission.

*Buckingham, Doolittle & Burroughs, L.L.P.*, *Richard A. Hernandez, Brett L. Miller* and *Julie M. Young*, for appellee Stahl-Wooster Division, A Scott Fetzer Company.

*Stewart R. Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy*, urging reversal and issuance of writ for *amici curiae* AFL-CIO and Ohio Academy of Trial Lawyers.

*Paul L. Cox*, urging reversal and issuance of writ for *amicus curiae* Fraternal Order of Police of Ohio, Inc.

*Gallon & Takacs Co., L.P.A.*, and *Theodore A. Bowman*, urging reversal and issuance of writ for *amici curiae* Ohio Conference of Teamsters and Northwestern Ohio Building and Construction Trades Council.

*Benesch, Friedlander, Coplan & Aronoff, L.L.P.*, *N. Victor Goodman* and *Mark D. Tucker*, urging reversal and issuance of writ for *amicus curiae* Ohio State Building and Construction Trades Council.

*Cloppert, Portman, Sauter, Latanick & Foley*, *Christopher A. Flint* and *Frederic A. Portman*, urging reversal and issuance of writ for *amicus curiae* Ohio Education Association.

*Vorys, Sater, Seymour & Pease, L.L.P.*, and *Robert A. Minor*, urging affirmance for *amici curiae* Ohio Self-Insurers Association, and Ohio Manufacturers Association.

_____

**DOUGLAS, J.**

{¶ 8} The issue before us is whether a claimant who leaves his[2] former position of employment for a new position forfeits TTC eligibility under the theory of voluntary abandonment of employment.

{¶ 9} In *Baker I*, we held that Baker's voluntary departure from Stahl-Wooster precluded Baker's eligibility for TTC, as his departure from his former position of employment was predicated on his own actions, *i.e.*, acceptance of a

_____

2. Since the claimant in the instant case is male, we use masculine adjectives and pronouns, except in the syllabus, throughout the opinion. We do so only for ease of reading. We continue to recognize that our opinions should always be gender-neutral.

truck mechanic position with Truck Stops, and not on his industrial injury. *Baker*, 87 Ohio St.3d at 563, 722 N.E.2d at 68. As previously mentioned, the *per curiam* opinion in *Baker I* was largely based upon the principles set forth in *McGraw* and *Jones & Laughlin*, and, notably, the opinion did not explore the relationship and differences between a claimant's eligibility for TTC, voluntary abandonment of a former position of employment, and continued employment for a different employer. Baker's continued employment, albeit not at Stahl-Wooster, is an important and distinguishing fact that separates this case from the typical voluntary abandonment of employment. In order to appreciate this distinction, it is first necessary to discuss the eligibility requirements for TTC and to review the purpose of TTC, particularly as it relates to the judicially created voluntary-abandonment theory.

{¶ 10} The pertinent portions of R.C. 4123.56, governing temporary disability compensation, provide:

"(A) * * * [I]n the case of temporary disability, an employee shall receive sixty-six and two-thirds per cent of his average weekly wage so long as such disability is total * * *. Payments shall continue pending the determination of the matter[;] however payment shall not be made for the period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to his former position of employment, when work within the physical capabilities of the employee is made available by the employer *or another employer*, or when the employee has reached the maximum medical improvement. * * * *The termination of temporary total disability, whether by order or otherwise, does not preclude the commencement of temporary total disability at another point in time if the employee again becomes temporarily totally disabled.*" (Emphasis added.)

{¶ 11} R.C. 4123.56 is instructive in that it ties an injured worker's eligibility for TTC to the worker's capability of returning to his former position of

employment. This "former position of employment" standard was intended to be a threshold physical measurement of whether an injured worker was able to perform the duties of the job that he held at the time of injury. A worker's physical capabilities are unrelated to whether the worker is actually working at his former position of employment and whether the former position is even available for the injured worker to return to after he is medically released.

{¶ 12} In *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586, at syllabus, we held, "Under R.C. 4123.56, temporary total disability is defined as a disability which prevents a worker from returning to his former position of employment." Quoting Webster's Third New International Dictionary (1961), this court stated that "position" is defined as "the group of tasks and responsibilities making up the duties of an employee." *Id.* at 632, 23 O.O.3d at 519, 433 N.E.2d at 588. *Ramirez* did not hold that the injured worker had to actually return to the specific job that he held at the time of his injury; rather, this court merely stated that the proper criterion was the injured worker's ability to perform the job duties of his former position of employment. Since the Industrial Commission had failed to take evidence regarding Ramirez's ability to return, either partially or completely, to his former position of employment as a construction laborer, this court affirmed the court of appeals' judgment, which granted appellant a writ of mandamus and ordered the Industrial Commission to take evidence to determine Ramirez's ability to return to his former job. *Id.* at 634, 23 O.O.3d at 520, 433 N.E.2d at 590. As exemplified in *Ramirez*, the former-position-of-employment test does not involve any consideration of whether the injured worker returns to his actual job that he held at the time of his injury or whether that job is even available; rather, the test is a physical guideline by which an injured worker's eligibility for TTC is determined.

{¶ 13} Eligibility for TTC is contingent upon an injured worker's inability to perform the duties of his former position of employment. *Ramirez*; *Jones &*

*Laughlin, supra*. This eligibility standard is consistent with the purpose of TTC, which is to compensate an injured employee for the loss of earnings he incurs while his injury heals. *State ex rel. Ashcraft v. Indus. Comm*. (1987), 34 Ohio St.3d 42, 44, 517 N.E.2d 533, 535. In some cases, however, a worker's own actions, rather than his industrial injury, may result in the worker's not being able to return to his former position of employment. In such cases, the injured worker is said to have voluntarily abandoned his former position of employment, thereby precluding his eligibility for TTC.

{¶ 14} For example, in *Jones & Laughlin*,[3] the facts were that the claimant had voluntarily retired from the work force and was receiving a regular pension. The Franklin County Court of Appeals held that "where the employee has taken action that would preclude his returning to his former position of employment, even if he were able to do so, he is not entitled to continued temporary total disability benefits since it is his own action rather than the industrial injury, which prevents his returning to such former position of employment." *Jones & Laughlin*, 29 Ohio App.3d at 147, 29 OBR at 164, 504 N.E.2d at 454. This was obviously meant to explain that where an employee voluntarily undertakes some action that precludes that employee from returning to employment from a temporary total disability, the employee has voluntarily abandoned the work force and is therefore not entitled to receive TTC, because the purpose for which TTC was created (compensation for loss of income during temporary and total disability) no longer exists. Thus, when an employee receiving TTC chooses for reasons unrelated to his industrial injury not to return to any work when able to do so, that employee has abandoned both his employment and his eligibility for TTC.

---

3. Appellee, Stahl-Wooster, lists an inaccurate citation for this case in its table of authorities and on page 3 of its supplemental brief. The proper citation for *State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm.* is (1985), 29 Ohio App.3d 145, 29 OBR 162, 504 N.E.2d 451. *Jones & Laughlin*, accordingly, is a case from a court of appeals – not "this" court as stated by Stahl-Wooster.

**{¶ 15}** In addition to *Jones & Laughlin*, where the claimant voluntarily and permanently removed himself from the work force, there are a number of other examples of situations wherein a claimant has been denied continued TTC based on his voluntary abandonment of his former position of employment: *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 517 N.E.2d 533 (incarcerated claimant was precluded from TTC, as claimant was presumed to have tacitly accepted the consequences of his voluntary acts leading to his incarceration and was therefore deemed to have voluntarily abandoned his former position of employment); *State ex rel. McGraw v. Indus. Comm.* (1990), 56 Ohio St.3d 137, 564 N.E.2d 695 (claimant who voluntarily abandoned his former position of employment by quitting his job for reasons unrelated to his injury was precluded from TTC); *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, 650 N.E.2d 469 (claimant voluntarily abandoned his former position of employment when he was terminated for failing to report to work for three consecutive days, thereby precluding his eligibility for TTC); *State ex rel. Cobb v. Indus. Comm.* (2000), 88 Ohio St.3d 54, 723 N.E.2d 573 (claimant voluntarily abandoned his employment when he was terminated for testing positive for drugs in violation of a written company policy, thereby precluding his eligibility for TTC).

**{¶ 16}** Relying on two of the foregoing voluntary-abandonment cases, *McGraw* and *Jones & Laughlin*, this court held in *Baker I* that Baker voluntarily abandoned his former position of employment by accepting a new position of employment and, therefore, Baker was not eligible for TTC. Upon reconsideration, we now find that both *McGraw* and *Jones & Laughlin* are factually distinguishable from the facts of the case now before us. Specifically, we now find that changing jobs is clearly distinguishable from some other situations of voluntary abandonment of employment and that a job change does not preclude a claimant from TTC.

{¶ 17} In *Jones & Laughlin*, the employer contended that because its employee was receiving a regular pension, the employee had voluntarily retired from the work force and was therefore precluded from receiving TTC. While denying the employer's request for a writ for other reasons, the court of appeals did agree with the employer that "voluntary retirement may preclude a claimant from receiving temporary total disability benefits to which he otherwise might be entitled, if by such retirement the claimant has voluntarily removed himself *permanently* from the work force." (Emphasis added.) 29 Ohio App.3d at 147, 29 OBR at 164, 504 N.E.2d at 454. We agree with this statement of the law, but the case that is now before us does not present facts that are the same as or similar to the facts in *Jones & Laughlin*.

{¶ 18} In the case at bar, Baker did not permanently abandon the work force. Baker secured other employment and continued to work until the injuries received in his original industrial accident again rendered him temporarily and totally disabled.

{¶ 19} *McGraw* is also distinguishable from the facts of the case now before us. Unlike Baker, the appellant in *McGraw* abandoned the work force for reasons unrelated to his original industrial injury, and he was not working at the time of his subsequent injury, which he claimed was related to his original industrial injury and again rendered him temporarily and totally disabled. *McGraw*, 56 Ohio St.3d 137, 564 N.E.2d 695. McGraw was originally injured in 1976 during his employment with Kenworth Trucking Company, and he was subsequently awarded workers' compensation benefits for his injury. Thereafter, he quit Kenworth for reasons unrelated to his work injury, and he moved to Pennsylvania. After working in several different positions, McGraw quit his last job in mid-1986, and he did not work thereafter. In March 1987, McGraw filed for continued TTC from Kenworth, which the Industrial Commission denied, based on his voluntary abandonment of

his position with Kenworth. For that reason, the court of appeals denied his request for a writ of mandamus, and this court affirmed the court of appeals' judgment.

{¶ 20} The claimant in *McGraw* not only abandoned the work force, as he was unemployed for approximately eight or nine months *before* his request for continued TTC, but he requested continued TTC more than ten years *after* his original industrial injury. McGraw was not working at the time of his injury; thus, he did not incur any loss of earnings at the time that he reaggravated his original industrial injury. McGraw, unlike Baker, abandoned his employment and the work force.

{¶ 21} Much is being made of the court of appeals' further statement in *Jones & Laughlin* that "[s]uch action [abandonment] would include such situations as the *acceptance of another position*, as well as voluntary retirement." (Emphasis added.) 29 Ohio App.3d at 147, 29 OBR at 164, 504 N.E.2d at 454. We believe that the court's language with regard to "another position" is being misconstrued, intentionally or otherwise. What the court was saying in using that language, we believe, is that when a claimant starts work at another position, of course TTC benefits cease because the claimant is no longer temporarily and totally disabled. That does not mean that if the claimant again becomes temporarily and totally disabled from injuries related to the original industrial injury that gave rise to the former payments of TTC, the claimant is barred from reviving that original claim.

{¶ 22} To clarify these issues, we developed a two-part test to determine a claimant's eligibility for TTC. In *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 44, 517 N.E.2d 533, 535, this court stated, "The first part of the test focuses on the disabling aspects of the injury, whereas the latter part determines if there are any factors, other than the injury, which would prevent the claimant from returning to his former position." *Id.* Futhermore, and significantly, we stated, "The secondary consideration is a reflection of the underlying purpose of temporary

total compensation: to compensate an injured employee for the loss of earnings which he incurs while the injury heals." *Id.*

{¶ 23} Applying the two-part test to the facts in *Ashcraft*, we held that the claimant's incarceration constituted a factor that precluded his receipt of TTC independently of his previously recognized work-related injury. *Id.* at 44-45, 517 N.E.2d at 535. This court found that claimant's incarceration was a factor other than the industrial injury that prevented the claimant from returning to his former position of employment. We held that claimant's incarceration was a voluntary act, since one may be presumed to tacitly accept the consequences of one's voluntary acts. *Id.* at 44, 517 N.E.2d at 535. Although not addressed in *Ashcraft*, this court's conclusion to deny TTC is consistent with the purpose of TTC. Since the incarcerated claimant would not be returning to work, he would not be experiencing a loss of earnings; hence, there was no *purpose* in awarding TTC. As in *Ashcraft*, there was also no *purpose* in awarding TTC to the claimant in *Jones & Laughlin* because the claimant had voluntarily left the work force through his retirement, and the claimant would not, therefore, experience a loss of earnings due to his industrial injury.

{¶ 24} Accordingly, we apply the two-prong test of *Ashcraft* to the facts of the case now before us. In this case, there is no debate about the application of the first prong. It is the second prong of the *Ashcraft* test, namely the underlying purpose of TTC, that compels a different result in the case at bar.

{¶ 25} First, with respect to the disabling aspect of Baker's injury, there is no dispute that Baker was unable to perform the duties of his former position of employment as a result of his industrial injury. Baker's original industrial injury was reaggravated at Baker's new job, and it is uncontroverted that Baker's subsequent injury was directly related to his original injury at Stahl-Wooster. Second, Baker's acceptance of his new position at Truck Stops was not a factor that prevented Baker from returning to his former position. Baker could (and did) return

11

to his former position, but then he elected to move to different employment. This change of employment was not related to his injury. Although Baker did not return permanently to his former position of employment,[4] he did secure other employment, thereby maintaining his continued presence in the work force. Unlike the claimants in *Ashcraft* and *Jones & Laughlin*, Baker did not voluntarily abandon the work force. Rather, Baker made a decision to accept a new position that was more aligned with his background, training, and career interests.

{¶ 26} Accordingly, we hold that when a claimant who is medically released to return to work following an industrial injury leaves his or her former position of employment to accept another position of employment, the claimant is eligible to receive temporary total disability compensation pursuant to R.C. 4123.56(A) should the claimant reaggravate the original industrial injury while working at his or her new job.

{¶ 27} Today's decision does nothing more than recognize the job mobility of today's labor market. No citation of authority is needed to acknowledge the obvious that any number of people, different from day to day, are moving to other jobs for their same employer, or to different jobs for different employers. To hold as appellees and their *amici* urge us would be to consign all workers to a particular employment position and employer unless they were willing to abandon some earned benefits. This would be so regardless of promotional opportunities in the same company or other opportunities outside the company. In this case, in the court of appeals, Judge Tyack dissented from the majority opinion, stating:

"I see a significant distinction to be made between the situation where an injured worker stops employment entirely and the situation where an injured worker moves from one job within his or her capability to another job within his or her

---

4. Baker actually returned to Stahl-Wooster the day after he was released to light-duty work. On that day, Baker signed a termination notice with Stahl-Wooster, stating that he had accepted other employment. Thereafter, Baker began his new job as a truck mechanic with Truck Stops.

capabilities. The workers' compensation system cannot be used to chain a worker to one specific employer. A worker who has an opportunity to advance his or her lot in life by a career change should not have to face the prospect of losing workers' compensation benefits if an injury sustained on the job with a former employer causes the worker to become unemployed, even at a later date.

"A complete abandonment of employment can, under certain circumstances, break the chain of cause and effect necessary to demonstrate that an injured worker actually is unemployed because of the injury. A change of jobs does not constitute an abandonment of employment and does not automatically break the chain of cause and effect."

{¶ 28} We agree, and we therefore vacate our decision in *State ex rel. Baker v. Indus. Comm.* (2000), 87 Ohio St.3d 561, 722 N.E.2d 67. Further, we respectfully reverse the judgment of the court of appeals and grant the requested writ of mandamus.

*Judgment reversed*
*and writ granted.*

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

————————————