[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
{¶ 1} Relator, Deborah K. Bowman, commenced this original action on March 7, 2002, requesting that this court issue a writ of mandamus directing respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's application for temporary total disability ("TTD") compensation, and to issue a new or amended order granting TTD compensation during the period starting on April 29, 1999, and ending on February 29, 2000. In the alternative, relator seeks a writ of mandamus returning the matter to the commission with instructions that the commission issue a new or amended order after it has considered the impact of State ex rel. Baker v. Indus. Comm. (2000), 89 Ohio St.3d 376
("Baker II"), instead of State ex rel. Baker v. Indus. Comm. (2000),87 Ohio St.3d 561 ("Baker I"), and further after complying with the rule of law set forth by the Ohio Supreme Court in State ex rel Fultz v.Indus. Comm. (1994), 69 Ohio St.3d 327.
 {¶ 2} On March 15, 2002, this matter was referred to a magistrate of this court, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who rendered a decision which included comprehensive findings of fact and conclusions of law. (Attached as Appendix A.) Particularly, the magistrate analyzed the record and the briefs of the parties and concluded that this court should issue a writ of mandamus directing the commission to vacate its order denying relator's application for TTD compensation, and conduct a new hearing on that application, as the commission had abused its discretion in denying relator's application. The matter is now before the court upon the objections to the magistrate's decision filed by respondent-employer, Fyda Freightliner, Inc.
 {¶ 3} Respondent's objections to the contrary, having fully reviewed the matter, this court concludes that the magistrate discerned the pertinent legal issues and properly applied the law to those issues. Having completed our independent review, we have found no error in either the magistrate's decision or analysis. Respondent's objections to the magistrate's decision are, therefore, overruled.
 {¶ 4} Accordingly, we adopt the magistrate's July 30, 2002 decision as our own, including the findings of fact and conclusions of law rendered therein. In accordance with that decision, we hereby grant a writ of mandamus instructing the commission to vacate its order denying relator's application for TTD compensation, and to conduct a new hearing to determine relator's application on the merits.
Objections overruled; writ granted.
DESHLER and BROWN, JJ., concur.
 APPENDIX A IN MANDAMUS {¶ 5} Relator, Deborah K. Bowman, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator temporary total disability ("TTD") compensation on the basis that she had voluntarily abandoned her employment and ordering the commission to grant her request for TTD compensation from April 29, 1999 to February 29, 2000. In the alternative, relator requests that a writ of mandamus issue returning this matter to the commission and requiring the commission to issue a new order after considering the impact of Stateex rel. Baker v. Indus. Comm. (2000), 89 Ohio St.3d 376 ("Baker II"), instead of State ex rel. Baker v. Indus. Comm. (2000), 87 Ohio St.3d 561
("Baker I"), and after complying with State ex rel. Fultz v. Indus.Comm. (1994), 69 Ohio St.3d 327.
Findings of Fact
 {¶ 6} Relator sustained a work-related injury on December 27, 1998.
 {¶ 7} Relator submitted a First Report of Injury ("FROI-1") application dated December 28, 1998, signed by Dr. Karl E. Haecker, who noted his diagnosis as lumbosacral strain/sprain with spasms.
 {¶ 8} On December 30, 1998, the Ohio Bureau of Workers' Compensation ("BWC") sent a letter to respondent Fyda Freightliner, Inc. ("employer"), asking the employer to certify the claim. The employer did certify the claim for medical only.
 {¶ 9} On January 7, 1999, relator's husband, Chuck Bowman, was notified by his employer, Penske Truck Leasing, that he was being transferred to Penske Truck Leasing in Huntington, West Virginia, effective January 11, 1999.
 {¶ 10} Relator tendered a handwritten note to her supervisor on January 8, 1999, indicating that her husband was being transferred to West Virginia and that she was not able to work or stand for very long periods of time because of her back.
 {¶ 11} The employer paid wage continuation benefits to relator through January 8, 1999.
 {¶ 12} On January 8, 1999, Dr. Haecker completed a report wherein he checked boxes indicating that relator was both able to perform her regular job duties while, at the same time, indicating that relator was restricted to modified duty at a sedentary level.
 {¶ 13} By order mailed January 25, 1999, the BWC allowed relator's claim for sprain lumbosacral.
 {¶ 14} On April 26, 1999, relator was examined by Dr. Mohamed Sadek, who issued a report on the same day. Dr. Sadek assessed relator's lumbosacral sprain/strain, sacral pain, muscle spasm, and reactive depression and began treating her with certain medications. Prior to a follow-up in one month, Dr. Sadek sought to obtain relator's old medical records.
 {¶ 15} Dr. Sadek completed a C-84 dated August 6, 1999, indicating that relator was temporarily and totally disabled from April 26, 1999 to an estimated return-to-work date of August 31, 1999.
 {¶ 16} Relator was examined by Dr. Stephen Altic who issued a report dated December 6, 1999. Dr. Altic reviewed a July 28, 1999 MRI taken of relator's lumbar spine and indicated that the MRI revealed lumbar disc herniation at L4-5 and L5-S1 which he concluded was a direct result of her industrial injury and which he recommended should be additionally allowed in her claim. Furthermore, Dr. Altic requested that relator be referred to Dr. Gregory Z. Mavian, an orthopedic and neurosurgeon specializing in spinal surgery.
 {¶ 17} By order dated December 6, 1999, the BWC additionally allowed relator's claim for: "Herniated Nucleus Pulposis L4-5, and Herniated Nucleus Pulposis L5-S1 with the presence of extruded disc material @ L5-S1."
 {¶ 18} Relator was seen by Dr. Mavian who issued a reported dated December 30, 1999. Dr. Mavian recommended as follows:
 {¶ 19} "* * * Based on the patient's history of failed treatment and conservative measures, she most likely will require surgical intervention. I explained to the patient and her husband that diskectomy and interbody graft and fusion with instrumenta-tion as undertaken by Dr. Sybert and myself would be the appropriate surgery. I explained the mechanism of the surgery on a plastic model as the best treatment. She and her husband have to decide as to whether they would like to pursue surgery, and they have confidence in what I have described.
 {¶ 20} "If she would like to proceed with surgery, I would be happy to make arrangements for her to see Dr. Sybert, or you could obtain authorization for the same at which time we will proceed with the appropriate treatment which I believe is certainly indicated and will help this individual."
 {¶ 21} The employer's appeal from the BWC order granting the additionally allowed conditions as well as relator's request for TTD compensation was heard before a district hearing officer ("DHO") on March 10, 2000. The DHO affirmed the order of the BWC additionally allowing relator's claim for herniated nucleus pulposis L4-5, L5-S1 with the presence of extruded disc material, L5-S1. The DHO also concluded that TTD compensation was payable from April 26, 1999 through February 29, 2000 and continuing upon submission of supportive evidence. This was based upon the reports of Dr. Altic and Sadek as well as a C-84 submitted by Dr. Michael C. Gentry. With regard to whether relator had voluntarily abandoned her employment, the DHO noted as follows:
 {¶ 22} "The District Hearing Officer finds that the claimant is not precluded from receiving temporary total compensation, as the employer has argued. While the claimant did move to West Virginia in part because of her husband's transfer, the claimant also states that she could no longer stand for long periods, due to her injury."
 {¶ 23} The employer appealed the DHO order and the matter was heard before a staff hearing officer ("SHO") on April 24, 2000. The SHO found that relator's claim was properly additionally allowed for the conditions previously indicated. However, the SHO concluded that relator was not entitled to TTD compensation because she had voluntarily abandoned her former position of employment. In this regard, the SHO noted that Dr. Haecker's January 8, 1999 report was inconsistent and could not be relied upon. In resolving the question of whether relator should be entitled to TTD compensation, the SHO stated as follows:
 {¶ 24} "The issue is whether the Claimant voluntarily abandoned her employment due to her work-related injury. The Staff Hearing Officer concludes that the evidence does not support such a finding. Although the Claimant's resignation letter appears to contain the `magic' words, the Staff Hearing Officer finds the medical evidence is not consistent with resignation due to the work-related injury.
 {¶ 25} "On 01/08/1999, the date of the resignation letter, Dr. Haecher [sic] completed a medical form on behalf of the Claimant. Dr. Haecher [sic] checked `yes' to the question that the Claimant is able to perform her usual job duties. Based upon that response, the Staff Hearing Officer concludes that the Claimant had recovered from her lumbosacral sprain injury and that any resignation is not related to her employment.
 {¶ 26} "However, on the same form, Dr. Haecher [sic] also circles and checks the sedentary duty box. As the Claimant's job would be heavier than sedentary work, the Staff Hearing Officer finds that a limitation to sedentary work is inconsistent with a finding of the Claimant's ability to perform her usual/regular job duties. The record contains no clarifying evidence from Dr. Haecher [sic] in regard to the above inconsistency. Therefore, as the form was completed only twelve days after the date of injury and Dr. Haecher [sic] does not opine that the restrictions are permanent, the Staff Hearing Officer finds treatment immediately following the Claimant's move in early 1999 to be relevant. There is no evidence in file that the Claimant received any medical treatment for her condition between 01/08/1999 and 04/26/1999, the date she was first treated by Dr. Sadek, a doctor in Ironton, Ohio. Nor is there any request for temporary total disability between 12/28/1998 and 04/26/1999, although the Employer apparently paid a wage continuation type benefit to 01/08/1999. The Staff Hearing Officer can only conclude that the Claimant did not seek out medical treatment over the above three and a half months because she did not need any treatment. Therefore, the Staff Hearing Officer further finds that the medical evidence on or immediately after 01/08/1999 does not support a condition of such severity that the Claimant would have been unable to work, permanently or temporarily. Con-sequently, the Staff Hearing Officer finds that the Claimant did not resign her employment on 01/08/1999 due to her work-related injury.
 {¶ 27} "The Staff Hearing Officer finds that the Claimant quit her job on 01/08/1999, because her husband was transferred to West Virginia, which is a reason unrelated to her injury. Therefore, consistent withBaker and McGraw [State ex rel. McGraw v. Indus. Comm. (1990),56 Ohio St.3d 137], the Claimant is precluded from receipt of temporary total compensation, as she, by her own actions, eliminated any opportunity to return to employ-ment with the instant Employer. Consequently, temporary total compensation is denied from 04/26/1999 to 02/29/2000."
 {¶ 28} Relator appealed and submitted the June 16, 2000 report of Dr. Haecker which provided as follows:
 {¶ 29} "At your request I reviewed my office record concerning Deborah Bowman. Based on her condition on January 8, 1999 to determine whether she was able to return to full duty at work. Her limitations were significant because of her work injury. On the Injured Worker Progress Note I indicated her restrictions, I mistakenly indicated she could return to full duty but that was not the case based upon her condition. Thank you for your cooperation in the matter."
 {¶ 30} Relator also submitted her own affidavit in an attempt to answer the SHO's concerns as to why the record appeared to indicate that she had not sought medical treatment for several months following her husband's transfer to West Virginia. In that affidavit, relator indicated that she had not been able to resume her normal job duties after her injury because of the pain she was experiencing. Relator also indicated that she began suffering bladder control problems very soon after her injuries. After relocating, relator indicated that she began trying to establish a relationship with a new doctor for her low back injury; however, relator indicated that many doctors were reluctant to see her because she did not have a new injury and had been receiving treatment elsewhere. Relator finally contacted Dr. Sadek; however, she still had to wait until April 26, 1999 before she could see him. Since leaving Columbus in January 1999, relator indicated that she had continuing difficulty walking and caring for herself on a daily basis without assistance.
 {¶ 31} Relator's appeal was refused by order of the commission mailed June 27, 2000.
 {¶ 32} On June 28, 2000, Dr. Mavian issued another report indicating that surgery was necessary in seeking authorization of same.
 {¶ 33} Surgery was performed on relator by Dr. Daryl R. Sybert on September 9, 2000. The following procedures were performed:
 {¶ 34} "* * * Posterior spinal fusion, L4-5.
 {¶ 35} "* * * Posterior spinal fusion, L5-S1.
 {¶ 36} "* * * VSP plate and screw stabilization (titanium), L4-5 and L5-S1.
 {¶ 37} "* * * Iliac crest bone graft harvest, left."
 {¶ 38} On March 11, 2002, relator filed the instant mandamus action in this court.
Conclusions of Law
 {¶ 39} For the reasons that follow, it is this magistrate's conclusion that this court should issue a writ of mandamus ordering the commission to vacate its order which denied relator's application for TTD compensation on the basis that she had abandoned her former position of employment and ordering the commission to conduct a new hearing on the matter.
 {¶ 40} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus.Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v.Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v.Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 41} TTD compensation awarded pursuant to R.C. 4123.56 has always been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. State exrel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630. Where an employee's own actions, for reasons unrelated to the injury, preclude him or her from returning to his or her former position of employment, he or she is not entitled to TTD benefits, since it is the employee's own action rather than the injury that precludes return to the former position. See State ex rel. Jones Laughlin Corp. v. Indus. Comm.
(1985), 29 Ohio App.3d 145. When determining whether an injured employee qualifies for TTD compensation, the court utilizes a two-part test. The first part of the test focuses on the disabling aspects of the injury. The second part of the test determines if there are any factors, other than the injury, which would prevent the injured employee from returning to his or her former position of employment. See State ex rel. Ashcraftv. Indus. Comm. (1987), 34 Ohio St.3d 42. However, only a voluntary abandonment precludes the payment of TTD compensation. State ex rel.Rockwell Internatl. v. Indus. Comm. (1988), 40 Ohio St.3d 44.
 {¶ 42} In the present case, the commission was not faced with a situation where the injured employee had been fired from their former position of employment for the violation of a written work rule. Likewise, the commission was not faced with the situation where the injured worker had left her former position of employment to obtain other employment. Further, the commission was not faced with the situation where the injured employee has retired from their former position of employment. There is case law available addressing each of the above circumstances.
 {¶ 43} In the present case, relator was injured on December 27, 1998. The very next day, relator submitted an FROI-1 signed by her treating physician, Dr. Haecker. On December 30, 1998, three days following the injury, the employer certified relator's claim and paid wage continuation benefits to her.
 {¶ 44} On January 7, 1999, 11 days following her injury, relator and her husband were notified that her husband was being transferred to West Virginia. The effective date for the transfer was January 11, 1999, a mere 15 days after relator sustained her work-related injury. On January 8, 1999, relator tendered a handwritten note to her supervisor informing him that her husband was being transferred and that she was not currently able to perform her work duties due to the pain in her back. In fact, as stated previously, relator had not returned to work since the date of her injury and the employer had been paying her wage continuation benefits.
 {¶ 45} In denying relator's application for TTD compensation the commission based its conclusion that relator had voluntarily abandoned her employment on one key factor: the SHO looked through the record and, after finding that relator did not submit additional medical evidence until April 26, 1999, the SHO "assumed" that relator did not seek out medical treatment for three and one-half months because she did not need any treatment. After looking at the first page of the SHO's order, it is apparent to this magistrate that both relator and her counsel were present at the hearing before the SHO. Instead of inquiring of the relator and her counsel why she had not submitted any medical evidence after January 8, 1999, the SHO chose to "assume" that she had no problems and therefore was not entitled to TTD compensation. Given that the workers' compensation laws are to be construed in favor of injured workers, this magistrate finds it most distressing that the SHO denied relator's application for TTD compensation on an assumption that she had not had enough pain to warrant treatment. On appeal of the SHO order, claimant submitted an affidavit explaining her difficulties in setting up an appointment with a new doctor after she and her husband had been forced to relocate a mere 15 days after the date of her injury. Relator also explained the pain she had been suffering during that time period. Furthermore, as was stated previously, relator's claim was ultimately allowed for herniated nucleus pulposis L4-5, L5-S1 with the presence of extruded disc material, L5-S1 and relator needed surgery for these allowed conditions which were a direct result of the injury. Given that the SHO could have asked some questions to clarify the record and failed to do so, this magistrate finds that the SHO abused his discretion in denying relator TTD compensation based upon an assumption. Relator is entitled to have her application for TTD compensation determined on the merits and not based on an assumption made by a hearing officer which could have been clarified.
 {¶ 46} Based on the foregoing, it is this magistrate's decision that relator has demonstrated that the commission abused its discretion in denying her application for TTD compensation based upon the assumption that her condition was not serious enough to warrant treatment immediately after her husband's transfer, and this court should issue a writ of mandamus ordering the commission to vacate its order denying her application for TTD compensation and the commission should conduct a new hearing to determine relator's application on the merits.