DECISION
{¶ 1} Relator, Goodyear Tire Rubber Company, commenced this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted temporary total disability ("TTD") compensation to respondent Ronald D. Salmons ("claimant") and ordering the commission to find that he is not entitled to that compensation.
 {¶ 2} This court referred the matter to a magistrate of this court, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that the commission did not abuse its discretion in finding that claimant was entitled to a period of TTD compensation following the cervical surgery. The magistrate accordingly recommended that this court deny the requested writ. Relator has filed four objections to the magistrate's decision, and the matter is now before this court for a full, independent review.
 {¶ 3} Under its first three objections, relator essentially reasserts arguments that were adequately addressed by the magistrate. These arguments relate to the possible preclusive effect of claimant's inability to work at the time of the disabling event on his ability to receive TTD compensation. Simply stated, relator, relying at least in part upon State exrel. Eckerly v. Indus. Comm., 105 Ohio St.3d 428,2005-Ohio-2587, maintains that claimant was ineligible for TTD compensation because he was not working at the time of the disabling event, and any decision to the contrary is erroneous. In her decision, the magistrate succinctly analyzed the relationship between claimant's entitlement to TTD compensation for the cervical condition and the existence of the knee injury, which had prevented claimant from working.
 {¶ 4} In addition, relator disagrees with the magistrate's statement that claimant had a "job" at the time of the disabling event. Relator also states that the issue "is whether the allowed conditions have caused him to be unable to work, and thus lose wages, not whether Mr. Salmon remains nominally on some employment roll." (Relator's Objections, at 7; emphasis sic.) Certainly, under the facts of this case, claimant's precise work status at the time of his cervical surgery does not necessarily fit into an easily defined category. Nonetheless, at the time of the surgery, claimant had not voluntarily abandoned his employment; he had not been working because of his debilitating knee injury. For these reasons, and the reasons set forth in the magistrate's decision, we do not find relator's first three objections to be persuasive.
 {¶ 5} By its fourth objection, relator argues that the magistrate failed to address the issue it raised as to whether the staff hearing officer ("SHO") abused his discretion in not addressing all administratively raised issues. Relator characterizes the "primary issue before the SHO" as "whether Mr. Salmon's neck surgery proximately caused him to be unable to work, and thus lose wages, when he was not working at the time of the disabling event." (Relator's Objections, at 8.)
 {¶ 6} We observe that the SHO addressed claimant's knee condition in his order awarding TTD compensation for the allowed condition. The SHO determined that "necessity for the surgical revision of the allowed cervical condition, the 11/14/2003 cervical laminectomy, and the period of convalescence therefrom constitute a new and distinct period of disability" and "that the same is totally disabling by any definition and distinguishable from and irrespective of any concurrent disability arising from any other condition." (SHO Order, at 2.) "Any other condition" would necessarily include claimant's knee injury. Even though the commission may not have framed and resolved the issues in this matter as relator desired, we find that the SHO order provided a sufficient explanation of the basis for the decision. Accordingly, we find relator's fourth objection to be unpersuasive.
 {¶ 7} Following our independent review of this matter, we find that the magistrate has properly discerned the pertinent facts and applied the relevant law to those facts. Thus, we overrule relator's objections, and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
Sadler and Travis, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. : Goodyear Tire Rubber Company, : Relator, : :
v. : No. 05AP-116 :
Ronald D. Salmons and : (REGULAR CALENDAR) Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on July 27, 2005. Taft, Stettinius Hollister LLP, Timothy L. Zix, Lawrence C.Davison and Kristi J. Kmetz, for relator.
Stephen E. Mindzak Law Offices, L.L.C., and Stephen E.Mindzak, for respondent Ronald D. Salmons.
Jim Petro, Attorney General, and Dennis H. Behm, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 8} Relator, Goodyear Tire Rubber Company, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted temporary total disability ("TTD") compensation to respondent Ronald D. Salmons ("claimant") and ordering the commission to find that he is not entitled to that compensation. Findings of Fact:
 {¶ 9} 1. On January 22, 1992, claimant sustained an injury in the course of and arising out of his employment with relator herein. Claimant's claim has been allowed for the following conditions: "cervical strain; cervical spinal stenosis; cervical foraminal stenosis; disc protrusion C5-6," and "cervical radiculopathy."
 {¶ 10} 2. Claimant returned to work with relator and continued to work until his voluntary retirement on July 1, 1997.
 {¶ 11} 3. The very next day, claimant took a new job with a different employer.
 {¶ 12} 4. On February 14, 2000, claimant sustained a knee injury in the course of and arising out of his employment with his new employer and filed a workers' compensation claim. Claimant has not returned to work since his knee injury.
 {¶ 13} 5. On November 13, 2003, claimant underwent surgical revision surgery for the surgical injury he sustained with relator herein.
 {¶ 14} 6. On January 20, 2004, claimant filed a motion requesting the payment of TTD compensation following the surgery to his neck. Claimant's motion was supported by a C-84 from his treating physician Dr. Robert Nixon, as well as the December 3, 2003 report from Dr. Nixon indicating as follows:
* * * He has been unable to return to work since June of 2000.
I anticipate he will need a full 3 months for healing. His job requires him to walk, climb ladders, and work at heights. He is also off of work due to a knee injury. I will see him back in the office in two months, at which time I anticipate advancing him to a formal physical therapy program. We will complete a C84 to keep him off an additional three months. * * *
 {¶ 15} 7. Claimant's application was heard before a district hearing officer ("DHO") on March 1, 2004. The DHO concluded that claimant's July 1, 1997 retirement from relator herein was not a bar to his receipt of TTD compensation because claimant returned to work for a new employer the day after his retirement. However, the DHO denied claimant's request for the payment of TTD compensation for the following reasons:
Claimant continued to work until he had a knee injury on 02/14/2000 (see claim #00-380078). Claimant has not worked sincehe injured his knee on 02/14/2000. Claimant was given social security disability based on his knee in 2002. DHO asked claimant if all of his neck problems from this claim were to disappear, but his knee problems from the other claim were to remain, could he return to his former position of employment? Claimant responded that he could not. Employer asked claimant if he had any intention of every [sic] working again, and claimant responded, "maybe, if I had a total knee replacement."
In recent cases the Supreme Court has emphasized that temporary total benefits are meant to replace income lost due to the industrial injury. From the evidence discussed above, DHO finds that claimant has lost no income due to this industrial injury. Claimant has not worked since he hurt his knee in another claim. It is clear that regardless of whether or not claimant had surgery on his neck on 11/13/2003, he still would not be working due to problems with his knee. Thus, claimant has not lost any income due to his neck surgery.
Therefore, temporary total benefits are not payable in this neck claim.
(Emphasis sic.)
 {¶ 16} 8. Claimant appealed and the matter was heard before a staff hearing officer ("SHO") on April 22, 2004, and resulted in an order modifying the prior DHO order. The SHO concluded that claimant was entitled to an award of TTD compensation as follows:
Temporary total disability compensation is hereby AWARDED from 11/13/2003 to the 04/22/2004 date of today's hearing, payments to continue upon continued certification thereof.
The Staff Hearing Officer rules that necessity for the surgical revision of the allowed cervical condition, the 11/14/2003 cervical laminectomy, and the period of convalescence therefrom constitute a new and distinct period of disability. He additionally rules that the same is totally disabling by any definition and distinguishable from and irrespective of any concurrent disability arising from any other condition.
Reliance for the foregoing finding and award is predicated upon the 11/13/2003, 12/03/2003 letters of attending Neurosurgeon Robert A. Dixon, D.O., and his C-84 dated 12/08/2003.
Employer has not chosen to rebut Dr. Dixon's certification of temporary total disability.
(Emphasis sic.)
 {¶ 17} 9. Relator appealed asserting that claimant's disability due to the knee injury and the lack of evidence that he was working following the knee injury, should bar the receipt of TTD compensation due to the neck injury.
 {¶ 18} 10. Relator's appeal was refused by order of the commission mailed July 9, 2004.
 {¶ 19} 11. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 20} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 21} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment.State ex rel. Ramirez v. Indus. Comm. (1982),69 Ohio St.2d 630. In order to be eligible for TTD compensation, a claimant must show that the industrial injury results in a temporary condition which prevents him from returning to his former position of employment. Id.
 {¶ 22} In the present case, the claimant has sustained two separate work-related injuries with two separate employers. It is undisputed that the cervical surgery which claimant had performed and from which claimant was recovering at the time of his application for TTD compensation is directly related to the industrial injury and the allowed conditions in the claim with this particular employer, relator herein. It is further undisputed that, but for the fact that claimant was already disabled and not currently working as a result of a separate knee injury occasioned with a separate employer, claimant would be entitled to receive TTD compensation following the surgery for his cervical condition. Although claimant had retired from his employment with this particular employer, relator herein, the claimant had resumed employment with a separate employer immediately thereafter. As such, the record reflects that this particular claimant had not abandoned the workforce and could receive TTD compensation relative to this particular claim, provided he met his burden of proof.
 {¶ 23} As stated previously, the issue in this case is whether or not claimant can receive TTD compensation where he has two separate allowed conditions, in two different claims, each of which is sufficient to render this claimant unable to return to his previous positions of employment.
 {¶ 24} Pursuant to State ex rel. Bradley v. Indus. Comm.
(1997), 77 Ohio St.3d 239, nonallowed medical conditions cannot be used to advance or defeat a claim for compensation. The Supreme Court of Ohio stated that the mere presence of a nonallowed condition in a claim for TTD compensation does not in and of itself negate the compensability of the claim. Instead, the claimant must meet his burden of showing that an allowed condition independently caused the disability.
 {¶ 25} Relator cites State ex rel. Crim v. Ohio Bur. ofWorkers' Comp. (2001), 92 Ohio St.3d 481, 483, for the proposition that, where there are other factors, other than the injury, which prevent the claimant from returning to his former position of employment, then TTD compensation should not be paid. Relator bases its argument on language from Crim where the court set out the general test for TTD compensation as follows:
R.C. 4123.56 provides compensation for workers who suffer injuries that result in temporary total disability. "[T]emporary total disability is defined as a disability which prevents a worker from returning to [her or] his former position of employment." State ex rel. Ramirez v. Indus. Comm. (1982),69 Ohio St.2d 630, * * * syllabus. Where an employee's own actions, for reasons unrelated to the injury, preclude her or him from returning to her or his former position of employment, she or he is not entitled to temporary total disability benefits, since it is the employee's own action rather than the injury that precludes return to the former position. State ex rel. Jones Laughlin Steel Corp. v. Indus. Comm. (1985), 29 Ohio App.3d 145,147 * * *. See, also, State ex rel. Baker v. Indus. Comm.
(2000), 89 Ohio St.3d 376 * * *. When determining whether an injury qualifies for temporary total disability compensation, the court utilizes a two-part test. "The first part of this test focuses on the disabling aspects of the injury, whereas the latter part determines if there are any factors, other than the injury, which would prevent the claimant from returning to [her or] his former position." State ex rel. Ashcraft v. Indus.Comm. (1987), 34 Ohio St.3d 42, 44 * * *. However, only avoluntary abandonment will preclude the payment of temporary total disability. State ex rel. Rockwell Internatl. v. Indus.Comm. (1988), 40 Ohio St.3d 44. 46 * * *.
(Emphasis sic.)
 {¶ 26} The portion of the Crim decision upon which relator relies addresses the issue of whether or not the injured worker has, by his own actions, done something to remove himself from eligibility for TTD compensation, i.e., voluntarily abandoned his former position of employment. That is not the situation in the present case. Claimant has not voluntarily abandoned the workforce. Claimant has two injuries: the cervical strain recognized in this claim and the knee injury recognized in a separate claim. Relator also cites State ex rel. Eckerly v.Indus. Comm., 105 Ohio St.3d 428, 2005-Ohio-2587, and argues that because claimant was not currently working when he filed his application for TTD compensation, he has not suffered a loss of earnings and cannot be paid TTD compensation. In Eckerly, at ¶ 7-10, the injured worker had been found to have voluntarily abandoned his employment, had not returned to the workforce after his discharge and, consequently, was not working at the time he applied for TTD compensation.[1] The court found that the injured worker was not entitled to TTD compensation and reasoned as follows:
For years, a voluntary departure from the former position of employment barred further TTC. State ex rel. Rockwell Internatl.v. Indus. Comm. (1988), 40 Ohio St.3d 44 * * *. State ex rel.Baker v. Indus. Comm. (2000), 89 Ohio St.3d 376, * * * changed that by extending TTC eligibility to claimants who left the former position of employment to accept other employment and were subsequently prevented from doing that job by a recurrence of the original industrial injury. State ex rel. McCoy v. DedicatedTransp., Inc., 97 Ohio St.3d 25, 2002-Ohio-5305, * * * extendedBaker's holding to anyone who voluntarily left the former position of employment regardless of the reason, including one who was discharged.
"A claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job." Id. at syllabus.
The present claimant seemingly misunderstands McCoy. He appears to believe that so long as he establishes that he obtained another job — if even for a day — at some point after his departure from Tech II, TTC eligibility is forever after reestablished. Unfortunately, this belief overlooks the tenet that is key to McCoy and all other TTC cases before and after: that the industrial injury must remove the claimant from his orher job. This requirement obviously cannot be satisfied if claimant had no job at the time of the alleged disability.
In the case at bar, there is no evidence that claimant was employed in February 2003 when the requested period of TTC was alleged to have begun. To the contrary, it appears that claimant was almost entirely unemployed in the two years after his discharge from Tech II, earning only approximately $800 during the period.
(Emphasis sic.)
 {¶ 27} As evidenced by the court's reasoning above cited, historically injured workers who voluntarily abandoned their former position of employment, for reasons unrelated to the allowed conditions in their claim, have been treated differently. At first, those injured workers who voluntarily abandoned the workforce were forever precluded from receiving TTD compensation because it was their voluntary actions which removed them from their former position of employment and not the allowed conditions in the claim. Following the court's decisions inState ex rel. Baker v. Indus. Comm. (2000), 89 Ohio St.3d 376
and State ex rel. McCoy v. Dedicated Transport, Inc.,97 Ohio St.3d 25, 2002-Ohio-5305, these injured workers who voluntarily abandoned their former positions of employment for reasons unrelated to the allowed conditions could receive TTD compensation in the future if their allowed conditions rendered them disabled and they were unable to return to the jobs they were holding at the time their originally allowed conditions rendered them disabled. Eckerly follows this line of reasoning: the injured worker voluntarily abandoned his employment; however, because he did not return to gainful employment following his discharge, he was not entitled to TTD compensation.
 {¶ 28} In the present case, claimant had not voluntarily abandoned his employment with his former employer, relator herein, nor with his second employer. While it is true that claimant was not able to work due to a separate condition at the time he filed his application for TTD compensation, he did have a job and he presented medical evidence establishing that he was temporarily totally disabled due to the allowed conditions in this claim. Claimant's evidence satisfies the requirements of the law. Although not currently working due to an injury, the commission found that claimant had not voluntarily abandoned the workforce and did not deny him compensation based upon the rationale applied to injured workers who do voluntarily abandon employment. Eckerly is satisfied because claimant did have a job at the time of his cervical surgery and claimant satisfied the requirements of Bradley by establishing that his cervical surgery was sufficient to independently cause his disability.
 {¶ 29} Because this magistrate finds that the allowed conditions in this claim and the resulting cervical surgery independently render claimant temporarily and totally disabled, pursuant to Bradley, the magistrate finds that the commission did not abuse its discretion in finding that claimant was entitled to a period of TTD compensation following the cervical surgery. As such, relator's request for a writ of mandamus is denied.
[1] Although the injured worker asserted that he had actually returned to work, at least briefly, in the two years since his discharge, he presented no evidence except a 2002 IRS 1099-Misc showing $804.98 of income for 2002.