DECISION
{¶ 1} Relator, Janice H. Wiley, commenced this original action in mandamus requesting a writ that orders respondent Industrial Commission of Ohio to vacate its order denying compensation for temporary total disability based on abandonment of employment, and to issue an order addressing compensation.
{¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision the magistrate concluded the commission's determination that relator voluntarily resigned her employment is supported by some evidence. Accordingly, the magistrate found relator had failed to meet her burden of proving entitlement to a writ of mandamus.
{¶ 3} Relator has filed four objections to the magistrate's conclusions of law:
{¶ 4} "1. The Magistrate incorrectly found that the commission, in its decision, relied on two items of evidence: Claimant's testimony regarding her reasons for quitting and the circumstances surrounding her signing of the resignation form, and the form itself, which stated that she voluntarily resigned.
{¶ 5} "2. The Magistrate erroneously concluded that the majority of the commission did not find claimant's testimony credible as to her reasons for leaving.
{¶ 6} "3. The Magistrate improperly found that the majority of the commission cited `some evidence' to support its determination that claimant voluntarily left the job.
{¶ 7} "4. The Magistrate inaccurately held that the alternative ground set forth by the commission for denying the motion (for temporary total disability) need not be addressed."
{¶ 8} Relator's first objection contends the magistrate incorrectly stated the evidence the commission relied on in denying relator's request for temporary total compensation.
{¶ 9} The magistrate determined "the commission relied on two items of evidence: claimant's testimony regarding her reasons for quitting and the circumstances surrounding her signing the resignation form, and the form itself, which stated that she voluntarily resigned." (Magistrate Decision ¶ 45.) The commission's order indeed indicates the commission relied on relator's testimony at the hearing, but the commission's majority opinion does not purport to rely on that testimony to the extent the magistrate concludes. Rather, it cites relator's testimony regarding both her return to work pursuant to her doctor's release, as well as the days Whirlpool Corporation ("Whirlpool") was closed during the holidays. Instead, the dissenting opinion relied heavily on relator's testimony concerning her reasons for quitting and the circumstances surrounding her signing the resignation form. The magistrate's opinion, however, does not differentiate between the majority and dissenting opinions in the statement to which relator's objection is directed. Even if the magistrate overstated the commission's reliance on relator's testimony, the error does not mandate relator's requested writ.
{¶ 10} As the magistrate determined, relator's retirement form, by not specifying an injury-related cause for relator's resignation, may be interpreted as a voluntary resignation. While the form itself is not conclusive, it may be so interpreted. Similarly, while relator testified to injury-related causes for her leaving employment with Whirlpool, her testimony is not conclusive; it may be believed or rejected. The majority opinion of the commission found the form more persuasive; the dissenting opinion found relator's testimony more persuasive. Because the record, however, does not contain the transcript of relator's testimony, relator's objection suffers in two ways: (1) we do not have the ability to view the entirety of relator's testimony, and thus do not know the whole of what she may have said about her resigning and the resignation form, and (2) relator is seeking that we find the commission abused its discretion based, in part, on testimony that is not in the record.
{¶ 11} As the magistrate properly noted, if some evidence supports the commission's conclusion, a writ of mandamus in inappropriate. Because the voluntary resignation form supports the commission's majority determination that relator voluntarily abandoned her employment, any error in the magistrate's overstating the commission's reliance on relator's testimony is not material.
{¶ 12} Relator's second objection contends the magistrate erroneously concluded that the commission did not find relator's testimony credible concerning her reasons for leaving her employment. As noted, however, the commission's majority was presented with divergent evidence: relator's testimony and the voluntary resignation form. By premising its decision on the voluntary resignation form, the commission's majority necessarily found claimant's testimony unpersuasive and rejected it.
{¶ 13} Relator's third objection contends the magistrate erred in concluding the commission cited some evidence to support its determination to deny the requested writ of mandamus. Contrary to relator's objection, however, the commission noted the voluntary resignation form that it found persuasive. Because the form constitutes some evidence on which the commission may rely, the objection is unpersuasive.
{¶ 14} Lastly, in her fourth objection, relator contends the magistrate should have addressed the alternative ground the commission set forth for denying the requested temporary total disability compensation. As the magistrate noted, however, relator's voluntary abandonment, in the circumstances of this case, eliminates the need to address the evidence supporting temporary total disability compensation.
{¶ 15} In the context of relator's fourth objection, however, we feel compelled to note that subsequent to the magistrate's determination, the Ohio Supreme Court decided State ex rel. McCoy v. Dedicated Transport, Inc., 97 Ohio St.3d 25, 2002-Ohio-5305. In it, the court concluded that "[a] claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56
if he or she reenters the workforce and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job." Id. at syllabus. Accordingly, relator's having voluntarily abandoned her position of employment with Whirlpool does not eliminate any possibility of her receiving temporary total disability compensation. As the Supreme Court explained in McCoy, however, receipt of such benefits is contingent on relator's reentering the workforce and then, because of the original injury, becoming temporarily or totally disabled while working at the new job. Because the record contains no evidence that relator reentered the workforce, temporary total disability compensation is not available under the principle set forth in McCoy. See, also, State ex rel. Baker v. Indus. Comm. (2000), 89 Ohio St.3d 376.
{¶ 16} For the foregoing reasons, relator's four objections are overruled.
{¶ 17} Following independent review, pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them with the noted addition. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, as modified. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled; writ denied.
KLATT and DESHLER, JJ., concur.
 APPENDIX A IN MANDAMUS
{¶ 18} Relator, Janice H. Wiley, filed this original action in mandamus asking the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying compensation for temporary total disability ("TTD") based on abandonment of employment and to issue an order addressing compensation.
Findings of Fact:
{¶ 19} 1. In July 1993, Janice H. Wiley ("claimant") experienced an electrical shock at work, reaching into a machine. She had no lost time due to the incident.
{¶ 20} 2. On February 3, 1994, claimant was diagnosed with reflex sympathetic dystrophy, stemming from the July 1993 incident. She began treatments including stellate ganglion blocks.
{¶ 21} 3. In February 1994, claimant filed a workers' compensation claim.
{¶ 22} 4. In March 1994 and at times thereafter, claimant received treatment from a psychologist, Dr. Steven E. Besing.
{¶ 23} 5. On C-50 forms, the self-insured employer certified the claim for "electric shock to left hand/shoulder/arm and reflex sympathetic dystrophy." In letters of March 1994 and April 1994, the employer confirmed the claim allowances.
{¶ 24} 6. The record includes a variety of reports and notes from claimant's physician in Indiana, Gerald Yarnell, M.D. On November 14, 1994, Dr. Yarnell reported a telephone conversation with claimant, who described a pain level of 3.5 to 4 on a scale of 0 to 10. Dr. Yarnell recommended that, "on the basis of this continued level of pain, that we take Mrs. Wiley off work for one to two days and put her on medrol Dosepak and see if this will cause the pain to subside." He stated that, if the pain did not subside, "we will probably bring her over for a repeat stellate block to see if this will, in fact, calm down this flare."
{¶ 25} 7. On December 5, 1994, Dr. Yarnell noted another telephone consultation with claimant, who reported that her pain level was 3 to 3.5 on the ten-point scale. Claimant said she had missed two days of work in the previous week due to an increase in her pain. Claimant needed prescriptions for Dibenzyline, Cytotec, Darvocet, and Indocin.
{¶ 26} 8. From February 22, 1994 until December 23, 1994, claimant received several closed periods of TTD compensation.
{¶ 27} 9. On December 23, 1994, claimant returned to work upon her doctor's release. (This fact is stated in the commission's order, quoted herein, and claimant does not dispute it in mandamus. The record does not indicate how long claimant had been absent upon her return to work on December 23, 1994.)
{¶ 28} 10. The parties agree that the company was shut down from December 25, 1994 through the new year and that claimant returned to work as scheduled on January 3, 1995.
{¶ 29} 11. On January 3, 1995, claimant signed a form stating that she voluntarily resigned her job. The space for stating a reason was left blank.
{¶ 30} 12. On January 16, 1995, claimant visited Dr. Yarnell for a left ganglion block. He noted that claimant had developed reflex sympathetic dystrophy after her 1993 accident and that her pain "now is extending from her hand into her entire left upper arm, shoulder, neck and left side of her face." Claimant reported a pain level of 8 and "advises us that she recently resigned from her job, secondary to her feelings of her inability to perform her job and the fact that her pain was being escalated by the repetitive tasks that her job entailed." Dr. Yarnell performed the block and claimant reported almost complete relief from pain.
{¶ 31} Dr. Yarnell recommended a spinal cord stimulator to treat claimant's progressive reflex sympathetic dystrophy along with a psychological evaluation with MMPI testing. He concluded: "It is my opinion that with this person's past work history it is very likely that she will be able to return to the active workforce."
{¶ 32} 13. On January 17, 1995, claimant telephoned Dr. Yarnell, reporting that she had significant improvement.
{¶ 33} 14. In April 1996, claimant filed a motion requesting, among other things, an additional allowance for "adjustment disorder" and payment of TT compensation commencing January 4, 1995.
{¶ 34} 15. In a letter of February 7, 1997, the employer recognized the claim for adjustment disorder.
{¶ 35} 16. In April 1997, a district hearing officer, noting the employer's recent acceptance of an additional condition, stated that the claim was cumulatively recognized for: "Effects of electrical current to left arm/hand, reflex sympathetic dystrophy[,] left upper extremity, adjustment disorder."
{¶ 36} 17. In February 1998, a staff hearing officer affirmed without discussion, and further appeal was denied in March 1998.
{¶ 37} 18. In April 1998, claimant filed a motion for reconsideration, stating that the hearing officers had improperly modified the allowed conditions and failed to address TTD.
{¶ 38} 19. In September 1998, a hearing was held before the members of the commission. Claimant testified on her own behalf, and S. North appeared for the employer. In an October 1998 order, the commission granted the requested relief in regard to the claim allowance, stating that the condition of reflex sympathetic dystrophy was not limited to the left arm. However, it denied the motion for TTD compensation, finding that claimant had voluntarily resigned her job.
{¶ 39} "It is further the finding of the Industrial Commission that the claimant is not entitled to temporary total compensation beginning on 01/04/95 and to continue. The Industrial Commission finds that the claimant voluntarily abandoned her employment on 01/03/95, when she resigned from her job at Whirlpool Corporation. Pursuant to the claimant's testimony at this hearing, she returned to work on 12/23/94, after being released to do so by her physician of record. The claimant testified that the company was shut down from Christmas until the new year and that her first day back to work was 01/03/95. The 01/03/95 action slip, as signed by the claimant, indicates a voluntary resignation, with no mention of pain from her injury as the reason for her separation from employment or medical documentation of the same."
{¶ 40} The commission also found that, even if claimant had not abandoned her employment, the TTD motion could not be granted because the medical evidence was not convincing:
{¶ 41} "The Industrial Commission finds that there is no credible medical evidence on file to support the payment of temporary total compensation from 01/04/95 and to continue. The Industrial Commission notes that most of the claimant's contact with Dr. Yarnell, six months prior to and six months following her resignation was made by telephone. In addition, the Physician Statement of Temporary Total Disability was not completed by Dr. Yarnell until 02/06/98, three years after the alleged start date of the claimant's disability. Dr. Yarnell further states that it is unknown when the claimant's disability will end and estimates January, 1999."
Conclusions of Law:
{¶ 42} The issue before the court is whether the commission abused its discretion in denying TTD compensation on the grounds that claimant voluntarily resigned her employment.
{¶ 43} Where a claimant has voluntarily relinquished his job, either by resigning or by abandoning it under State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401, the claimant is deemed to have accepted the consequence of being without wages for a period of time and is not eligible to receive TTD compensation. E.g., State ex rel. Baker v. Indus. Comm. (2000),89 Ohio St.3d 376. However, the court has explained that, where the conduct is causally related to the injury, the termination of employment is not voluntary. State ex rel. Rockwell Internatl. v. Indus. Comm. (1988), 40 Ohio St.3d 44. Further, depending on the circumstances, a claimant who voluntarily resigned is again eligible for TTD compensation after he takes new employment and then experiences a temporary and total loss of earnings due to his allowed conditions. See Baker, supra.
{¶ 44} The precise issue before the court is whether claimant has met her burden of proving that the commission's finding — that claimant voluntarily abandoned her employment — was unsupported by some evidence cited in the decision or that the decision showed a misapplication of applicable law. For the reasons that follow, the magistrate concludes that claimant has not met that burden.
{¶ 45} In its decision, the commission relied on two items of evidence: claimant's testimony regarding her reasons for quitting and the circumstances surrounding her signing of the resignation form, and the form itself, which stated that she voluntarily resigned. Neither of these factors was conclusive. The form was not conclusive as to voluntariness for purposes of workers' compensation because a "voluntary resignation" on an employer's form may mean nothing more than the employee was not discharged. Likewise, claimant's testimony that her industrial injury caused her to quit was not conclusive. Both are evidentiary factors that the commission may consider when determining whether a departure from a job was caused by the allowed conditions or was voluntary.
{¶ 46} All the factors are subject to interpretation by the commission, which alone has authority to evaluate evidentiary weight and credibility. State ex rel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575. In mandamus, questions of the weight and credibility of evidence are outside the court's scope of review. State ex rel. Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18. The Ohio Supreme Court has made clear that, in mandamus, the court must uphold a commission order that is supported by some evidence, even when other evidence, greater in quantity and/or quality, supports the contrary result. State ex rel. Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373.
{¶ 47} In these proceedings, claimant testified before the commission. Her testimony is described in the dissenting opinion, and claimant also provided an affidavit to memorialize her testimony. The dissenting commissioner argued eloquently for the persuasiveness of this testimony, stating that the medical evidence corroborated an inability to continue working due to the allowed conditions. Nonetheless, the majority did not find claimant's testimony convincing. It relied on her testimony that she was medically capable of returning to work on December 23, 1994, and that her reason for not working from December 25 through January 2, 1995, was that she was not scheduled to work due to a plant shut-down. The commission found a lack of evidence to prove that, as of January 3, 1995, claimant's industrial injury required her to quit her job. The majority of the commission simply did not find claimant's testimony credible as to her reasons for leaving.
{¶ 48} The magistrate finds no abuse of discretion, as the majority was not required to accept claimant's testimony. It had discretion to rely on the evidence of capacity to work as of the resignation date. It was permitted to view the form as tending to corroborate a resignation not caused by the industrial injury.
{¶ 49} The magistrate notes that, although claimant was absent sporadically during 1994 due to her allowed condition, there was no evidence that the employer failed to accommodate the absences or pay TTD compensation. The record includes no doctor's report that claimant was advised that she must leave the job due to her allowed condition. Although Dr. Yarnell reported claimant's statement of her reasons for quitting, he did not state that claimant was medically required to quit the job based on the allowed conditions. Although there are medical opinions that claimant needed to take time off occasionally, there is no medical certification that it was necessary for claimant to terminate that employment entirely as of January 3, 1995.
{¶ 50} In sum, the evidence was subject to interpretation. The majority of the commission did not find claimant's evidence persuasive, and it cited "some evidence" to support its determination that claimant voluntarily left the job. The commission was thus within its discretion to deny the motion for TTD compensation. The alternative ground set forth by the commission for denying the motion need not be addressed.
{¶ 51} In reaching this conclusion, the magistrate is mindful that, in State ex rel. King v. Trimble (1996), 77 Ohio St.3d 58, 63, the Ohio Supreme Court commented that it would not substitute its own judgment for the commission's although the evidence was "not particularly compelling to us." Here, although the magistrate acknowledges that the views presented by claimant's counsel and the dissenting commissioner are compelling, the magistrate nonetheless cannot recommend that the court disturb the commission's ruling. The magistrate concludes that claimant has not met the burden of proof in mandamus and that the court should deny the requested writ.