OPINION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Shawn E. Eckerly ("relator"), has filed an original action in mandamus requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying temporary total disability compensation ("TTD") beginning February 5, 2003, and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, relator's complaint was referred to a magistrate of this court. The magistrate rendered a decision, which includes findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate recommended that this court deny the requested writ.
 {¶ 3} We have understood relator's objections as follows. Relator first argues the magistrate erred in determining relator did not engage in "gainful employment." Specifically, relator argues that this determination is improper and should be reserved for the commission. There is no indication in the record that the magistrate determined whether relator was gainfully employed. The magistrate clearly states, "[a]ssuming for the sake of argument that this court can consider the 1099," and goes on to explain that whether or not relator is engaged in gainful employment is immaterial as there is no evidence that relator was eligible for TTD compensation for the period beginning February 5, 2003. (Magistrate's Decision at 7.) Further, relator's 1099 was not submitted until after the April 29, 2003, decision of the Staff Hearing Officer ("SHO"). Another SHO, acting within his/her discretion, rejected relator's appeal, resulting in the 1099 never being admitted into evidence. "The commission alone shall be responsible for the evaluation of the weight and credibility of the evidence before it." State ex rel. Burley v. CoilPacking, Inc. (1987), 31 Ohio St.3d 18, 20-21. The magistrate makes no determination whether relator was gainfully employed. Accordingly, relator's first objection is overruled.
 {¶ 4} In his second objection, relator appears to argue the commission abused its discretion in failing to consider evidence showing relator had returned to work. Specifically, relator asserts that the commission failed to determine whether the 1099 and the C-84 from Dr. Littlefield is sufficient evidence sustaining relator's burden of proof that he returned to gainful employment.
 {¶ 5} As pointed out above, the 1099 was never admitted into evidence and it was not an abuse of discretion for the commission to not consider it. The C-84, while present in the record, is not determinative of a return to "gainful employment." It is, at best, evidence of a date upon which relator is able to return to work. The form is not designed to be an indication of sustained employment. As such, it is not an abuse of discretion for the commission to not consider it as evidence of gainful employment and to determine that "Mr. Eckerly provided no documentation of a return to work." (Stip.R. at 47.) Again, the commission is the exclusive evaluator of evidentiary weight. Burley, supra, at 18. Accordingly, relator's second objection is overruled.
 {¶ 6} Following independent review pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's findings of fact and conclusions of law contained therein as our own. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objections overruled; writ of mandamus denied.
Petree and Klatt, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Shawn E. Eckerly, : Relator, : v. : No. 03AP-621 Industrial Commission of Ohio : (REGULAR CALENDAR) and Tech II., Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on January 29, 2004 Angela D. Marinakis, for relator.
Jim Petro, Attorney General, and Keith D. Blosser, for respondent Industrial Commission of Ohio.
Dinsmore Shohl, LLP, and Michael L. Squillace, for respondent Tech II., Inc.
 IN MANDAMUS {¶ 7} In this original action, relator, Shawn E. Eckerly, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him temporary total disability ("TTD") compensation beginning February 5, 2003, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 8} 1. On February 15, 2001, relator sustained an industrial injury while employed with respondent Tech II., Inc. ("Tech II"). The industrial claim was initially allowed for: "fracture right metacarpal shaft-closed; fracture right metacarpal-closed (nos)," and was assigned claim number 01-322997.
 {¶ 9} 2. The stipulated record contains a C-84 request for TTD compensation on which William G. Littlefield, M.D., certified a period of TTD disability beginning May 31, 2001. Dr. Littlefield indicated that June 13, 2001 was the "actual" return-to-work date.
 {¶ 10} 3. Following a June 25, 2002 hearing, a staff hearing officer ("SHO") issued an order denying TTD compensation from May 31, 2001 to June 13, 2001, on grounds that relator had voluntarily abandoned his employment on May 17, 2001, under the three-prong test of State ex rel. Louisiana-Pacific Corp. v.Indus. Comm. (1995), 72 Ohio St.3d 401. Relator was discharged by Tech II on May 17, 2001 for a violation of a written company rule regarding absence from work.
 {¶ 11} 4. The June 25, 2002 SHO's order was not administratively appealed to the commission.
 {¶ 12} 5. In the meantime, on June 11, 2002, relator was examined by Stephen D. Watson, M.D., Ph.D. On that date, Dr. Watson performed a right-sided stellate ganglion block and a right-sided T2 paravertebral injection. Those procedures gave relator some immediate relief from his arm and hand pain and neck pain. In his June 11, 2002 report, Dr. Watson wrote:
* * * My impression is that he has a complex regional pain syndrome type II of the right hand
* * *
I am requesting that you add an allowance to his previous diagnosis of complex regional pain syndrome or RSD of the right upper extremity. * * *
 {¶ 13} In his June 11, 2002 report, Dr. Watson also states that he is requesting authorization for "a series of 12 stellate ganglion blocks and the right T2 paravertebral blocks."
 {¶ 14} 6. On December 26, 2002, Mervet K. Saleh, M.D., who had been treating relator for pain in his right upper extremity, wrote:
* * * [I]t is my medical opinion that in all probability, Mr. Eckerly suffers from complex regional pain syndrome type II. This condition should be added to his previous diagnosis. With the allowance of the condition, treatment such as stillar [sic] ganglion blocks can be used to provide considerable pain relief and allow him to return to work and have a more normal lifestyle.
 {¶ 15} 7. Following a January 10, 2003 hearing, a district hearing officer ("DHO") additionally allowed the claim for: "RSD/CRPS in the right upper extremity" based upon the December 26, 2002 report of Dr. Saleh and the June 11, 2002 report from Dr. Watson. Apparently, the January 10, 2003 DHO's order was not administratively appealed.
 {¶ 16} 8. On a C-84 dated February 11, 2003, Dr. Saleh certified a period of temporary total disability beginning February 5, 2003 to an estimated return-to-work date of May 5, 2003. Relator requested TTD compensation based upon Dr. Saleh's C-84.
 {¶ 17} 9. On February 24, 2003, the Ohio Bureau of Workers' Compensation ("bureau") notified the commission that Dr. Saleh's C-84 was being referred to the commission for adjudication because the employer wished to contest the request for TTD compensation.
 {¶ 18} 10. Following a March 21, 2003 hearing, a DHO issued an order denying the request for TTD compensation beginning February 5, 2003. The DHO's order states:
* * * The District Hearing Officer finds that temporary total disability compensation was previously denied by Staff Hearing Officer order of 06/25/2002 with the finding that Mr. Eckerly had voluntarily abandoned his employment. Pursuant to the Supreme Court case of State ex rel. McCoy v DedicatedTransport (2002) 97 Ohio St.3d 25, Mr. Eckerly must provide evidence that he did not abandoned the entire workforce and that he returned to employment following his prior termination. Mr. Eckerly provided no documentation of a return to work and did not attend today's hearing to testify regarding same.
As such, Mr. Eckerly has not met his burden to establish his entitlement to temporary total disability compensation from 02/05/2003 forward.
 {¶ 19} 11. Relator administratively appealed the DHO's order of March 21, 2003. Following an April 29, 2003 hearing, an SHO issued an order indicating that relator appeared at the hearing. The SHO affirmed the DHO's order with the following explanation:
The claimant was previously found to have voluntarily abandoned his former position of employment, per Staff Hearing Officer order dated 06/25/2002. He has not provided any evidence to the contrary, i.e., that he has returned to the workforce; therefore, he remains ineligible to receive temporary total disability compensation.
 {¶ 20} 12. Relator filed an administrative notice of appeal from the April 29, 2003 SHO's order. In support of the appeal, relator submitted a copy of Internal Revenue Service ("IRS") form 1099-MISC for calendar year 2002. IRS form 1099-MISC is designed for the reporting of miscellaneous income. On the form, "Red Express Delivery Services, Inc.," is listed as the payer. $804.98 is listed under "other income." Shawn E. Eckerly is listed as the recipient of the income.
 {¶ 21} 13. In further support of the appeal, relator's counsel submitted a written memorandum stating:
* * * [T]he claimant filed an appeal and did appear to testify about his attempts to return to work and the difficulty he had as a result of his ongoing chronic hand condition. At that time, the claimant testified that he had worked for Express Temporary Agency and would be able to provide proof of the same. Subsequently, the claimant did provide and file the enclosed 1099 verifying that he did have taxable income in the year 2002, after having been found to have abandoned his former position of employment, on 5-17-01 * * *.
For the reasons set forth above, the claimant states that there is proof that he did attempt to re-enter the workforce, thereby preserving his eligibility to receive temporary total disability benefits. As evidence[d] by the 1099, and as testified to at his hearing, the claimant not only attempted to return to the workforce, but succeeded in doing so for a short period in 2002. Further, the claimant relies on the medical develop-ments in his claim subsequent to his finding of abandonment, namely that he was suffering from a significant neurological condition of RSD/CRPS, to help explain his inability to hold down more steady employment * * *.
 {¶ 22} 14. On June 11, 2003, another SHO mailed an order refusing relator's administrative appeal from the April 29, 2003 SHO's order.
 {¶ 23} 15. On June 19, 2003, relator, Shawn E. Eckerly, filed this mandamus action.
Conclusions of Law:
 {¶ 24} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below. The syllabus of State ex rel. McCoy v. DedicatedTransport, Inc., 97 Ohio St.3d 25, 2002-Ohio-5305, states:
A claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.
 {¶ 25} At ¶ 40-43 of the McCoy opinion, the Supreme Court of Ohio further clarifies its holding and then applies it to the facts presented in the two cases decided. The McCoy court states:
It is important to note that this holding is limited to claimants who are gainfully employed at the time of their subsequent disabilities. In contrast, every case that we decided before [State ex rel. Baker v. Indus. Comm. (2000),89 Ohio St.3d 376] involved a claimant who had not only voluntarily abandoned the former employment, but who also had no job at the time of the subsequent period of disability. Thus, none of our prior decisions is affected by our holding today, and claimants in those situations will continue to be ineligible for TTD compensation.
We now proceed to apply our holding to the facts presented in the instant cases. In case No. 2001-0232, claimant McCoy voluntarily abandoned his former position of employment at Dedicated Transport on March 13, 1998, by virtue of being justifiably fired. He sought TTD compensation beginning on January 26, 1999, the date he was allegedly diagnosed with a disc herniation, or alternatively on June 28, 1999, the date of his surgery. However, there is no evidence in the record to suggest that McCoy was gainfully employed at these times or that he would have been employed if not for his industrial injury. To the contrary, the record reveals that McCoy's only employment from March 13, 1998, when he was fired, to June 28, 1999, when he underwent surgery, consisted of driving his cousin's truck on 12 to 15 separate days between February 3, 1999, and April 15, 1999 for $12 each day. Indeed, McCoy's attorney succinctly stated during a hearing held on October 29, 1999, before the commission's hearing officer that this" activity * * * did not constitute sustained gainful employment."
Accordingly, McCoy is not eligible to receive TTD compensa-tion for the periods in question.
In case No. 2001-0406, claimant Brandgard voluntarily abandoned his former position of employment at America's Body Co. on September 10, 1999, when he was justifiably fired after testing positive for cocaine. He sought TTD compensation from September 24, 1999, the date he underwent surgery, to October 22, 1999, the date he returned to work for a different employer. However, there is no evidence in the record of this case to suggest that Brandgard was actually employed at his new job prior to September 24, 1999, or between September 24, and October 22, 1999.
 {¶ 26} Assuming for the sake of argument that this court can consider the 1099-MISC and the assertions of relator's counsel in the memorandum supporting the administrative appeal, at best, relator was only briefly employed sometime during the year 2002 during the interim between his voluntary abandonment of employment and the date of claimed disability.
 {¶ 27} There is no contention or suggestion here that relator was gainfully employed at the time of his subsequent claimed disability beginning February 5, 2003. Apparently, relator was, at best, unemployed during January and early February 2003, a period for which there is no claim for temporary total disability. In fact, there is no claim for temporary total disability for any period during the year 2002 when relator earned only $804.98. Accordingly, even giving relator the benefit of the evidence he belatedly submitted, he cannot show eligibility for TTD compensation for the period beginning February 5, 2003 under McCoy, supra.
 {¶ 28} The magistrate further notes that relator asserts that the C-84 from Dr. Littlefield is evidence that he reentered the workforce on June 13, 2001, that the commission abused its discretion by failing to find that he reentered the workforce on June 13, 2001, and that the commission abused its discretion by failing to find that he was eligible for TTD compensation because he reentered the workforce on June 13, 2001. The magistrate disagrees with relator's contentions.
 {¶ 29} The listing on the C-84 indicating that June 13, 2001 is an "actual" return-to-work date is, at best, some evidence that relator returned to work on June 13, 2001. It is not some evidence that relator worked beyond June 13, 2001. The C-84 form is not designed to seek employment information beyond the date that the claimant is said to have returned to work. Relator's suggestion that the commission had the discretion to read into the C-84 evidence that relator had become gainfully employed beginning June 13, 2001, is incorrect. The C-84 from Dr. Littlefield provides no evidence to advance relator's claim to TTD eligibility following his May 17, 2001 voluntary abandonment of employment.
 {¶ 30} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 /S/ Kenneth W. Macke
KENNETH W. MACKE MAGISTRATE