DECISION
{¶ 1} Relator, Charmayne Nixon ("relator"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for temporary total disability ("TTD") compensation, and ordering the commission to find that she is entitled to that compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this case was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate found that the commission did not abuse its discretion in denying realtor's request for TTD compensation. Therefore, the magistrate recommended that this court deny relator's request for a writ of mandamus.
 {¶ 3} In her objections to the magistrate's decision, relator essentially reargues the same points addressed in the magistrate's decision.
 {¶ 4} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, relator's objections to the magistrate's decision are overruled and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.
Writ of mandamus denied.
Petree and French, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Charmayne Nixon, : Relator, : v. : No. 05AP-755 Industrial Commission of Ohio and : Keystone Powdered metal Co., : Respondents. :
 MAGISTRATE'S DECISION Rendered on January 25, 2006 Kennedy Colasurd Co., L.P.A., and Michael D. Colasurd,
for relator.
Jim Petro, Attorney General, and Lasheyl N. Sowell, for respondent Industrial Commission of Ohio.
Littler Mendelson, P.C., and Paul R. Goodburn, Jr., for respondent Keystone Powdered Metal Company.
 IN MANDAMUS {¶ 5} Relator, Charmayne Nixon, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for temporary total disability ("TTD") compensation, and ordering the commission to find that she is entitled to that compensation.
Findings of Fact:
 {¶ 6} 1. Relator sustained a work-related injury on May 23, 2002, when she picked up some gears and felt something pop in her left wrist. Relator presented at the Grant Emergency Room on May 23, 2002. Relator was diagnosed with "[a]cute strain and tendonitis left wrist." Relator was told to use a splint for four days, was instructed to perform no work with her left hand, and was advised to follow up with Work Health.
 {¶ 7} 2. Relator followed up at Work Health and was seen by Matthew A. Bridger, M.D., on May 28, 2002. Dr. Bridger indicated that relator could return to work with the following restrictions relative to her left hand: she could occasionally use her hand, grasp with her hand, and perform work involving fine manipulation; could lift, push or pull up to five pounds frequently and up to ten pounds occasionally; and was precluded from holding her wrist in a frequent or sustained awkward position, and using tools that vibrate. Dr. Bridger further restricted relator to no kneeling, crawling or climbing. Dr. Bridger indicated that the restrictions were in effect until June 7, 2002.
 {¶ 8} 3. By order mailed June 24, 2002, the Ohio Bureau of Workers' Compensation ("BWC") allowed relator's claim for the following conditions: "left sprain of wrist; left tenosynovitis."
 {¶ 9} 4. Relator stopped working for Keystone Powdered Metal Co. ("employer"), shortly after her injury. While there is some dispute concerning the reasons relator left her employment, it is undisputed that relator held numerous other jobs thereafter. The special investigations unit of the BWC completed a report indicating that relator was employed at Swan Cleaners as a part-time presser/finisher from November 11, 2002 to January 11, 2003, at which time she was laid off due to cut backs. Relator worked for Village Thrift Store as a full-time cashier from April 12 to June 23, 2003, at which time she was terminated because she failed to show up and/or call in for three days. Relator was employed at Trilegiant as a full-time sales associate from July 11 to August 15, 2003, when she was terminated for poor performance. Also, relator informed a doctor that she worked for Kroger for three months following her injury. It is not apparent why relator left her position with Kroger.
 {¶ 10} 5. Relator continued to seek treatment for her wrist. Relator was examined by Michael B. Cannone, D.O., who diagnosed her with "[s]prain of the left wrist with de Quervain's disease." (See report dated August 26, 2003.) Dr. Cannone referred relator to see his partner, Desmond J. Stutzman, D.O., who examined her and diagnosed the following: "1. Sprain, left wrist, specifically the CMC joint left thumb." "2. Degenerative arthritis, left thumb CMC joint." (See report dated October 1, 2003.) Neither doctor provided any restrictions nor gave an opinion relative to whether relator could work in their reports.
 {¶ 11} 6. Thereafter, relator requested a bone scan for her left wrist based upon Dr. Stutzman's October 1, 2003 report. That request was denied by the employer.
 {¶ 12} 7. Upon appeal, relator submitted the January 20, 2004 report of Jeffrey J. Phillips, D.C., who noted that relator's treatment, to date, has failed and that it was apparent that relator suffered from more than just a sprain/strain. In that report, Dr. Phillips stated further:
Ms. Nixon is unemployable due to her injury and modest educational and work skills. She is forced to seek naumal [sic] labor employment, which she is not able to perform. Lack of proper diagnostic and treatment will continue to prevent her from seeking gainful employment.
 {¶ 13} 8. By order of a district hearing officer ("DHO") dated April 13, 2004, relator's claim was additionally allowed for "sprain CMC joint left thumb."
 {¶ 14} 9. Thereafter, by order mailed September 3, 2004, the BWC ultimately allowed relator's claim for the additional condition of "degenerative joint disease left hand."
 {¶ 15} 10. It was not until 2004 that relator requested TTD compensation. At a hearing before a DHO on February 22, 2005, relator withdrew her request for TTD compensation. At that time, the DHO determined relator's average weekly wage.
 {¶ 16} 11. On March 22, 2005, relator renewed her motion for TTD compensation seeking compensation from September 18, 2002. In support thereof, relator submitted C-84s from Dr. Phillips as well as the medical reports of Drs. Stutzman and Cannone.
 {¶ 17} 12. The matter was heard before a DHO on April 25, 2005. The DHO denied relator's request for the period of September 18 through September 23, 2002, because relator's request for TTD compensation was not filed until September 24, 2004. As such, any period of compensation more than two years prior to September 24, 2004, was barred by R.C. 4123.52. Thereafter, the DHO concluded that relator was entitled to TTD compensation from September 24, 2002 and continuing minus the following periods in which relator had worked: "11/11/2002 through 01/11/2003; 04/12/2003 through 06/23/2003; and 07/11/2003 through 08/15/2003."
 {¶ 18} 13. The employer appealed and the matter was heard before a staff hearing officer ("SHO") on June 10, 2005. The SHO determined that no periods of TTD compensation were payable to relator for the following reasons: compensation from September 18 through September 23, 2002 was denied pursuant to R.C. 4123.52; further compensation was denied because relator voluntarily resigned from her position of employment with the employer of record on or about June 1, 2002. In reaching this conclusion, the SHO relied upon the January 24, 2005 statement of Paul A. Orr, the plant manger for the employer of record. In that letter, Mr. Orr stated as follows:
Ms. Nixon's last day worked at Keystone Powdered Metal Company was 6/1/02. Prior to her voluntary resignation she reported an injury on 5/23/02. This injury was to her left wrist.
When Ms. Nixon came in to the Keystone Plant to return her uniforms I was present in the production office. This happened sometime in early June. Known to be before June 13, 2002 as this is the date the uniforms were turned into Cintas. She held the hanger(s) that contained her uniforms by her left hand when she entered the production supervisor's office. She lifted her uniforms and placed them on a hook on the back of the production supervisor's door with her left hand. Since I had just been involved in investigating her injury report I was aware of her said condition. I asked Ms. Nixon how her injured wrist/hand was and she rotated her left hand around in a circular motion and said "just fine".
With that I wished her well with endeavors outside the plant.
 {¶ 19} 14. The SHO also accepted and found credible the evidence presented which showed relator had left her subsequent employment for reasons unrelated to the allowed conditions in her claim. The SHO rejected the C-84s of Dr. Phillips because he certified her as incapable of lighter transitional work based upon this injury which was to her non-dominant left hand. At the hearing, relator admitted that she is right-hand dominant. The SHO also relied upon the report of the special investigations unit which established that relator has worked intermittently since leaving the employer of record and that she has left those other jobs for reasons unrelated to her injury.
 {¶ 20} 15. Relator's further appeal was refused by order of the commission mailed July 2, 2005.
 {¶ 21} 16. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 22} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 23} In this mandamus action, relator challenges the commission's denial of her application for TTD compensation by arguing that the commission abused its discretion by relying upon the lone statement from Mr. Orr and further argues that the commission misapplied the law in finding that she was not entitled to any TTD compensation after she established that she had not voluntarily abandoned the entire workforce. For the reasons that follow, the magistrate rejects relator's arguments.
 {¶ 24} TTD compensation awarded pursuant to R.C. 4123.56 has always been defined as compensation for wages lost where a claimant's injury prevents any return to the former position of employment. State ex rel. Ramirez v. Indus. Comm. (1982),69 Ohio St.2d 630. However, where an employee's own actions, for reasons unrelated to the injury, preclude him or her from returning to his or her former position of employment, he or she is not entitled to TTD benefits, since it is the employee's own action rather than the injury that precludes return to the former position. See State ex rel. Jones Laughlin Steel Corp. v.Indus. Comm. (1985), 29 Ohio App.3d 145. For years, a voluntary departure from the former position of employment barred the payment of TTD compensation. State ex rel. Rockwell Internatl.v. Indus. Comm. (1988), 40 Ohio St.3d 44. State ex rel. Bakerv. Indus. Comm. (2000), 89 Ohio St.3d 376, changed that by extending eligibility for TTD compensation to claimants who left the former position of employment to accept other employment and were subsequently prevented from doing that job by a recurrence of the original industrial injury. State ex rel. McCoy v.Dedicated Transport, Inc., 97 Ohio St.3d 25, 2002-Ohio-5305, extended Baker's holding to anyone who voluntarily left their former position of employment regardless of the reason, including one who was discharged, provided that he or she re-entered the workforce and, due to the original industrial injury, became temporarily and totally disabled while working at his or her new job.
 {¶ 25} In the present case, the evidence indicates that relator had been released to return to work with restrictions relative to her left hand. Specifically, the documentation from Work Health indicates that relator was released to return to work on May 28, 2002 with restrictions relative to her left hand in effect until June 7, 2002. According to the January 24, 2005 statement of Mr. Orr, relator had returned to work and last worked on June 1, 2002. The record does not indicate whether the restrictions placed on relator precluded her from performing her job. Further, the record does not indicate whether or not the job relator returned to, pursuant to Mr. Orr's statement, was or was not her original job. As such, as long as Mr. Orr's statement constitutes "some evidence," there is no other evidence contradicting his statement that she did return to work. Further, relator failed to present any medical evidence to establish that she was disabled from returning to her former position of employment at the time she left her employment.
 {¶ 26} While relator challenges Mr. Orr's statement as being "illegally notarized," there is no requirement that Mr. Orr's statement be notarized at all. Further, relator's argument that her employer failed to argue voluntary abandonment for three years and that this argument should be ignored at this time is without merit. Relator herself did not apply for TTD compensation until approximately two years after her industrial injury. At that time, relator withdrew her request for TTD compensation. Relator filed a second request for TTD compensation in March 2005. As such, the magistrate finds that Mr. Orr's statement, almost three years from the date of relator's injury, was properly before the commission and could have been considered.
 {¶ 27} It is undisputed that relator could have terminated her employment with the employer of record at any time. Since the Supreme Court of Ohio's holding in Baker, an employee is not forced to remain with an employer indefinitely just to be able to receive TTD compensation at some time in the future. However, it is clear that, if an employee leaves employment, the employee will only be entitled to TTD compensation in the future if the employee has secured other employment and if the allowed conditions preclude the employee from working.
 {¶ 28} In the present case, relator does not dispute that she took other employment after leaving the employer of record. As such, it was incumbent upon relator to prove that she was currently unable to work due to the allowed conditions. While relator did submit medical reports indicating that she continued to have problems with her left wrist, there is also evidence before the commission that relator had secured at least three other jobs since leaving the employer of record and that she was no longer employed by any of those employers for reasons unrelated to the allowed conditions in this claim. The first piece of medical evidence submitted by relator certifying a period of TTD compensation is contained in the January 20, 2004 medical report of Dr. Phillips wherein he stated that relator was "unemployable due to her injury and modest educational and work skills."
 {¶ 29} It is undisputed that questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. Teece, supra. Furthermore, the determination of disputed factual situations is within the final jurisdiction of the commission and is subject to correction by an action in mandamus only upon a showing of an abuse of discretion. See State ex rel. Allied Wheel Products, Inc. v. Indus. Comm.
(1956), 166 Ohio St. 47; State ex rel. Allerton v. Indus. Comm.
(1982), 69 Ohio St.2d 396. Furthermore, it is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision which is contrary to the commission's decision. State ex rel. Pass v. C.S.T. Extraction Co. (1996),74 Ohio St.3d 373.
 {¶ 30} In the present case, there was some evidence before the commission that relator returned to work with the employer of record and then left that employment for reasons unrelated to the injury. The start date relator requested for her TTD compensation was four months after the date she supposedly last worked for the employer. Furthermore, the record indicates that relator held several jobs after she left her former position of employment and that she was no longer working for any of those employers for reasons unrelated to the allowed conditions in this claim. Further, based upon relator's testimony that she was right-hand dominant, the commission was within its discretion to determine that the C-84s of her treating physician were not credible because his restrictions only related to her left, non-dominant hand. Relator argues that all of the medical evidence demonstrates that she has continuing problems with her left hand; however, that fact is not in dispute. The burden was upon relator to establish that, after leaving her former position of employment and securing other work, relator was not able to work, at that time, due to the allowed conditions in her claim. Relator simply did not meet this burden of proof in the eyes of the commission. The commission cited the evidence relied upon and provided an adequate explanation. The fact that the commission found that relator's evidence was not credible does not mean that a writ of mandamus is appropriate.
 {¶ 31} Based on the foregoing, the magistrate finds that relator has not demonstrated that the commission abused its discretion in denying her application for TTD compensation as the commission cited that evidence upon which it relied and provided a reasonable explanation for its decision. As such, relator's request for a writ of mandamus is denied.