[This decision has been published in *Ohio Official Reports* at 91 Ohio St.3d 407.]

THE STATE EX REL. STATON, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLANTS.

[*Cite as State ex rel. Staton v. Indus. Comm*., 2001-Ohio-88.]

*Workers' compensation—Application for temporary total disability compensation benefits—Industrial Commission's order denying benefits based on lack of medical evidence and voluntary retirement—Cause remanded for further consideration by court of appeals—Court of appeals' judgment reversed and commission's order reinstated—Claimant who vacates work force for non-injury reasons not related to the allowed condition and who later alleges an inability to return to former position of employment is not eligible for temporary total disability compensation benefits.*

(No. 99-1106—Submitted February 27, 2001—Decided May 23, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 98APD04-454.

_____

*Per Curiam.*

{¶ 1} Appellee-claimant, Larry O. Staton, alleged that on April 26, 1993, he received an electrical shock at work. No one witnessed the incident. Despite his assertion that the shock was strong enough to render him unconscious, no one saw claimant in a disoriented, incapacitated, or unconscious state. To the contrary, claimant finished the work day and apparently left without mentioning the incident to anyone.

{¶ 2} The following day, claimant reported the incident to his employer, appellant McDonnell Douglas Corporation. Claimant complained of neck and shoulder soreness to the plant physician. No treatment was recommended and claimant returned to work. No further complaints were made to the company doctor's office, and there is no other evidence of treatment. Over McDonnell

Douglas's objections, a workers' compensation claim was eventually allowed for cervical and bilateral shoulder strain.

**{¶ 3}** On May 3, 1993, claimant took a medical leave of absence that ultimately extended into a permanent retirement. Supporting documents from claimant's attending physician, Dr. Joseph Lutz, dated August 30, 1993, November 15, 1993, December 30, 1993, and January 27, 1994, all list coronary artery disease and depression as the sole reasons for claimant's retirement. Neither condition is allowed in this claim.

**{¶ 4}** On December 6, 1996, claimant moved for permanent total disability compensation ("PTD"), but it does not appear as if claimant submitted any supporting medical evidence. On April 24, 1997, claimant was examined on the issue by commission neurologist Dr. Kottil W. Rammohan. Dr. Rammohan opined that claimant's allowed condition had not reached maximum medical improvement ("MMI"), and suggested physical therapy and "work hardening." He also stated that claimant would probably never be able to function in his former job as a machinist.

**{¶ 5}** Dr. Rammohan's report precipitated two things. First, it generated an interlocutory order from appellant Industrial Commission of Ohio holding claimant's PTD application in abeyance due to the temporary nature of claimant's condition. It also prompted claimant to move for temporary total disability compensation ("TTD"). Claimant accompanied that motion with an August 22, 1997 document from Dr. Lutz.

**{¶ 6}** A district hearing officer initially denied TTD after rejecting Lutz's report as unpersuasive and rejecting Rammohan's report as defective on procedural grounds. A staff hearing officer ("SHO") reversed, and awarded TTD from April 24, 1997, through September 5, 1997, and to continue upon submission of medical proof. The commission, in turn, vacated the SHO and denied TTD, writing:

"[C]laimant has failed to meet his burden of proving by the preponderance of the medical evidence that the period of temporary total disability compensation requested (from April 24, 1997 and continuing) and the medical treatment requested * * * are causally related to the allowed conditions in the claim. In support of his Motion, the claimant has submitted the C-84 which was signed by Joseph Lutz, M.D. on August 22, 1997. Dr. Lutz does not indicate in this report what currently treated allowed conditions prevent the claimant from returning to work. Instead, Dr. Lutz diagnoses the claimant with 'coronary artery disease' as well as other conditions that are not allowed in the claim (i.e., 'myalgia-myositis' and 'cervical radiculopathy'). Dr. Lutz, in his clinical findings, notes that the claimant has 'chest pain with exertion,' which finding is consistent with his earlier diagnosis of coronary artery disease. Nowhere in this C-84 does Dr. Lutz indicate that the allowed cervical and bilateral muscle strain is at all responsible for the claimant's inability to return to his former position of employment. A later filed C-84, which was signed by Dr. Lutz on October 23, 1997, specifically attributes the claimant's inability to return to his former position of employment only to 'coronary artery disease' 'myalgia-myositis' and 'cervical radiculopathy.' Finally, the Industrial Commission finds that no narrative report has been submitted by claimant in support of the October 21, 1997 C-86 Motion and there is no explanation by Dr. Lutz why an MRI and EMG are necessary to treat this nearly five-year-old muscle strain and not the nonallowed conditions listed on the C-84. As such, the claimant has failed to support his C-86 motion with appropriate proof.

"The Industrial Commission further finds that the claimant's retirement from his former position of employment was not due to any condition other than the claimant's nonallowed coronary artery disease. The Industrial Commission finds that, after receiving the electrical shock which resulted in the allowed conditions in the claim, the claimant was able to return to work without missing any time. The claimant worked an additional week and then immediately went on

medical disability due to his chronic heart problems and depression. There is no indication in the claim file that claimant received ongoing treatment for his allowed conditions while on disability leave. This finding is based on the October 18, 1993 letter sent by Rosalie Kay (Human Resources Administrator for the employer) and the various medical reports on file diagnosing the claimant with coronary artery disease."

{¶ 7} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County alleging that the commission abused its discretion in denying TTD. The magistrate observed that the tenor of the commission's order implied that Dr. Rammohan's report was not considered. However, because the commission's decision was supported by "some evidence," the magistrate found that the nonconsideration was harmless. The full appellate court, on the other hand, found the declaration of "some evidence" to be premature, given the nonconsideration of Rammohan's report. It instead returned the cause to the commission for consideration of Rammohan's report, "since it might have a bearing on the question about whether or not Mr. Staton voluntarily retired solely due to his coronary artery disease."

{¶ 8} This cause is now before this court on appeal as of right.

{¶ 9} The February 19, 1998 Industrial Commission order gave two reasons for TTD denial—lack of medical evidence and voluntary retirement. Dr. Rammohan, however, established baseline TTD eligibility by certifying that claimant's allowed condition had not reached MMI and prevented a return to the former position of employment. Consequently, the commission's finding that "no narrative report has been submitted by claimant in support" has produced a consensus that Dr. Rammohan's report was overlooked by the commission on appeal. The issue is whether nonconsideration is fatal.

{¶ 10} Appellants maintain that it is not, arguing that claimant's retirement renders the medical issue moot. Claimant disagrees and asserts that his TTD

4

eligibility has been preserved. The court of appeals found that the controversy hinged on the character of claimant's retirement, felt that consideration of Dr. Rammohan's report might clarify the issue, and returned the cause.

{¶ 11} The character of retirement is indeed relevant because if injury-related, it is involuntary and cannot bar TTD. *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 531 N.E.2d 678. If it is not injury-related, the result may be different.

{¶ 12} For years, voluntary departure from employment was the end of the story, and harsh results sometimes followed. Claimants who left the former position of employment for a better job forfeited TTD eligibility forever after. In response, *State ex rel. Baker v. Indus. Comm.* (2000), 89 Ohio St.3d 376, 732 N.E.2d 355, declared that voluntary departure *to another job* no longer barred TTD. It retained, however, the prohibition against TTD to claimant's who voluntarily abandoned the *entire labor market*. Thus, the claimant who vacates the work force for non-injury reasons not related to the allowed condition and who later alleges an inability to return to the former position of employment cannot get TTD. This, of course, makes sense. One cannot credibly allege the loss of wages for which TTD is meant to compensate when the practical possibility of employment no longer exists.

{¶ 13} In this case, claimant retired from the work force in 1993.[1] All relevant retirement documentation from his attending physician listed claimant's nonallowed heart condition and depression as the reasons for departure. Appellants cite this as "some evidence" that claimant's work-force retirement was due to causes other than industrial injury, barring TTD.

---

1. There has been no allegation from claimant that his retirement was less than total. Work-force departure is further evinced by claimant's PTD application—which was ultimately unsuccessful—which hinges on permanent departure from the labor market.

**{¶ 14}** The court of appeals found that any evidentiary review was premature, given that Rammohan's report may not have been considered. This conclusion is tenuous.

**{¶ 15}** As a general rule, a cause is returned to the commission when it is clear that evidence has been overlooked. *State ex rel. Fultz v. Indus. Comm.* (1994), 69 Ohio St.3d 327, 631 N.E.2d 1057. *Fultz* was motivated by the concern that a different result might have been reached if the commission had considered the omitted evidence. There is, however, an exception. Where the omitted evidence "is incapable of supporting a result contrary to that already reached by the commission," failure to consider it is not fatal and the cause will not be returned. *State ex rel. Shields v. Indus. Comm.* (1996), 74 Ohio St.3d 264, 268, 658 N.E.2d 296, 299.

**{¶ 16}** In the case at bar, Dr. Rammohan did not contradict the commission's conclusion that claimant's retirement was due solely to nonallowed conditions. Dr. Rammohan did not discuss why claimant retired or whether his industrial injury played a part. In fact, what little Dr. Rammohan relates regarding claimant's prior work history is incorrect.[2] Thus, a remand serves no purpose.

**{¶ 17}** The judgment of the court of appeals is hereby reversed, and the commission's order is reinstated.

*Judgment reversed*

*and commission's order reinstated.*

MOYER, C.J., PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., dissents.

RESNICK and F.E. SWEENEY, JJ., dissent and would affirm the judgment of the court of appeals.

---

2. Contrary to Rammohan's report, claimant did return to his former position of employment after his industrial injury and worked without incident until his retirement.

————————

*Philip J. Fulton & Associates* and *William A. Thorman III,* for appellee.

*Betty D. Montgomery,* Attorney General, and *William J. McDonald,* Assistant Attorney General, for appellant Industrial Commission.

*Gibson & Robbins-Penniman* and *J. Miles Gibson,* for appellant McDonnell Douglas Corporation.

————————