DECISION
{¶ 1} In this original action, relator, Grace Bartley, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying her permanent total disability ("PTD") compensation on grounds that she voluntarily retired, and to enter an order that adjudicates her PTD application on the merits. *Page 2 
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(D) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate examined the evidence and issued a decision (attached as Appendix A), including findings of fact and conclusions of law. Therein, the magistrate concluded that relator has not demonstrated that the commission abused its discretion and, therefore, the magistrate recommended that this court deny relator's request for a writ of mandamus.
 {¶ 3} Although there is no stated objection to the magistrate's decision, relator essentially contends that she advised her employer that she was terminating her employment due to her industrial injury. This is in essence the same issue raised to and addressed by the magistrate. For the reasons set forth in the magistrate's decision, we do not find relator's position well-taken.
 {¶ 4} Following an independent review of the matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, relator's objections to the magistrate's decision are overruled and we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
 SADLER, P.J., and KLATT, J., concur. *Page 3 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 5} In this original action, relator, Grace Bartley, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation on grounds that she *Page 4 
voluntarily retired, and to enter an order that adjudicates her PTD application on the merits.
Findings of Fact: {¶ 6} 1. Relator has two industrial claims that arose from her employment as a bookkeeper/file clerk with respondent Fahey Banking Company ("Fahey Bank"), a state-fund employer. Her injury of August 18, 1999 is allowed for "contusion of buttock; lumbar strain/sprain; lumbosacral sprain/strain; aggravation of pre-existing depressive disorder-NOS and anxiety disorder-NOS," and is assigned claim number 99-485486. Her injury of September 14, 2000 is allowed for "sprain of foot NOS, right; fracture metatarsal-closed, right; degenerative arthritis, right ankle," and is assigned claim number 00-516082.
 {¶ 7} 2. Fahey Bank records show that relator's last day at work was October 15, 2002. She then took eight days of vacation and never returned to work at Fahey Bank.
 {¶ 8} 3. Relator was hospitalized during October 2002, shortly after her last day of work at Fahey Bank. The hospitalization was for treatment of some type of blood disorder that is unrelated to either industrial claim.
 {¶ 9} 4. On January 9, 2004, at the request of the Ohio Bureau of Workers' Compensation ("bureau"), relator was examined by psychologist Michael T. Farrell, Ph.D. In his report dated January 13, 2004, Dr. Farrell opined:
 Based upon the results of this evaluation and the information provided/reviewed, it is my opinion that Ms. Bartley does experience both a Depressive Disorder-NOS and an Anxiety Disorder-NOS. * * * It is my opinion that both the Depressive *Page 5 
Disorder-NOS and the Anxiety Disorder-NOS pre-existed the job injury of record and were then aggravated by the job injury of record as well as a multitude of other life/health stressors. The related psychopathology in no way prevents her from resuming her previous employment activity or other forms of sustained remunerative work. * * *
Dr. Farrell further opined that the allowed psychological conditions are at maximum medical improvement ("MMI").
 {¶ 10} 5. Following a March 3, 2004 hearing, the commission additionally allowed claim number 99-485486 for "aggravation of pre-existing depressive disorder-NOS and anxiety disorder-NOS."
 {¶ 11} 6. On April 22, 2004, relator moved for temporary total disability ("TTD") compensation based upon the newly allowed psychological conditions.
 {¶ 12} 7. Relator's April 22, 2004 motion prompted Anita Von Kaenel, Vice President of Fahey Bank, to send the following letter, dated April 27, 2004, to the bureau:
 Our records show that Grace Bartley's last physical day at work was October 15, 2002. She then had 8 days of vacation and never returned to work in 2002. She was in the hospital for some type of blood disorder, as far as I know it had nothing to do with her injury while working for Fahey Bank[.]
 Grace had informed her supervisor, Cathy Branham, verbally in September of 2002 that she would be retiring at the end of October 2002. We did not hear anything from Grace until November and she told us that she would retire formally as of December 31, 2002. There was no mention of any type of disability retirement, it was a normal retirement. I did not receive a written letter from Grace until January 13, 2003. In this letter she put that she retired medically, that was the first I had heard this. *Page 6 
 I did not meet with Grace until January 17, 2003, at which time we did her termination papers. We also enrolled her in COBRA coverage, which she stated that she needed to help her with prescription costs. If she had retired medically, we would not have done COBRA coverage. There was no mention of disability.
 I have enclosed an article from our local newspaper that I came across in Grace's file. This article shows Grace on December 31, 2002, she seems fine at that time.
 {¶ 13} 8. Accompanying the April 27, 2004 letter from Ms. Von Kaenel is a "To Whom It May Concern" statement from relator. The body of the statement is typewritten, but handwriting appears thereon. There is a handwritten note from "Grace" to "Donna" along with an October 14, 2002 date. The handwritten note states: "I didn't know who to give this to, I thought you would know."
There is also handwriting indicating that the statement was "received 1-13-03 By Anita Von Kaenel."
The typewritten body of the statement reads:
 I, Grace H. Bartley, will retire medically from Fahey Bank on December 31, 2002 due to injured back in 1999 and broken foot 2000 which occurred during my employment of 15 years with Fahey Bank. I feel the company is responsible for continuing my insurance. I am under a Doctor's care for a problem with my blood which I am losing, of which the cause has not been determined yet. I have more tests to go through.
 I want everyone to know that I enjoyed my 15 years with Fahey Bank.
 I hope you will handle this retirement to both of our satisfaction.
(Emphasis sic.) *Page 7 
 {¶ 14} 9. Neither the district hearing officer's ("DHO") order of June 15, 2004, nor the staff hearing officer's ("SHO") order of July 25, 2004, mention relator's retirement from Fahey Bank or any of the documents relating to retirement.
 {¶ 15} 10. On November 15, 2005, relator filed an application for PTD compensation. In support of her application, relator submitted a one paragraph statement, dated October 11, 2005, from psychiatrist J.T. Spare, M.D., stating:
 * * * [T]he above patient continues to be symptomatic. He [sic] has inability to concentrate, restlessness, difficulty with concentration and control of mood. There has been some improvement with current treatment but, given her overall situation, I would suggest that the patient is permanently and totally disabled, due to her injury and associated mental health condition.
 {¶ 16} 11. On January 12, 2006, at the commission's request, relator was examined by John W. Cunningham, M.D. Dr. Cunningham conducted a physical examination only. In his narrative report dated January 26, 2006, Dr. Cunningham wrote:
 * * * [T]his individual has a 9% whole person permanent partial impairment in regards to these two claims in combination on a non-psychiatric, non-emotional basis. * * * [I]n my medical opinion, this individual is capable of light physical work activity provided that she is not asked to be ambulatory more than a third of the work shift, including as she was most recently employed.
 {¶ 17} 12. On January 19, 2006, at the commission's request relator was examined by psychiatrist Donald L. Brown, M.D. In his report dated January 24, 2006, Dr. Brown opined that relator has a "Class III level of impairment," which he described as "moderate." Dr. Brown estimated relator's impairment percentage to be 25 percent. *Page 8 
 {¶ 18} 13. Earlier, on January 12, 2006, Dr. Cunningham completed a physical strength rating form on which he indicated that relator can perform "light work."
 {¶ 19} 14. In further support of her PTD application, relator submitted a vocational report from Molly S. Williams dated February 24, 2006. In her report, Williams concludes:
 * * * [W]hen the disability factors are correctly identified, stated, and considered: an individual unable to perform her customary past relevant work as a File Clerk; an individual of advanced age (age fifty-five or over); an individual with a high school education completed in the remote past (1945); an individual with no transferable skill(s); and an individual not expected to make a vocational adjustment to other work based upon the allowed physical impairments as assessed by The Industrial Commission's Specialist, John W. Cunningham, M.D., and the allowed mental impairments as assessed by the attending psychiatrist, J. T. Spare, M.D., it is obvious that the claimant is permanently and totally disabled.
 {¶ 20} 15. Relator's PTD application was heard by an SHO on May 3, 2006. The hearing was recorded and transcribed for the record.
During cross-examination of relator by counsel for Fahey Bank, the following exchange was recorded:
 Q. * * * I was reading that retirement letter that you wrote and I was reading the letter that the bank had sent into the Bureau of Workers' Compensation, it indicated that you were having a blood disorder condition?
 A. I don't have that anymore now.
 Q. Did you have it in October?
 A. Yes, they don't know what caused it.
 Q. Okay. Were you hospitalized in 2002 for that condition? *Page 9 
 A. I don't remember. Yes.
 Q. Was is around October?
 A. For a while, yes.
 Q. Okay.
 A. Well they — yes, I was, I'm sorry.
 Q. Again I just have one other —
 A. I went right from work, I was having problems and I went to the doctor and they ordered tests on me at the hospital, I didn't have very much blood in my system but they didn't know why.
 Q. Okay. When did you find out that, when did you get cured from that blood condition?
 A. Oh, I've been, I go — I was going every week and they would, you know, take my blood see how I was doing, then it got to every month and then it got to I don't do anymore now.
 HEARING OFFICER: Was that in October of `02 that this happened to you?
 A. Uh-hum, October something and — and I worked right up till I was working.
 Q. Right up until to your hospitalization?
 A. Yeah.
 {¶ 21} 16. Following the May 3, 2006 hearing, the SHO issued an order denying relator's PTD application. The SHO's order explains:
 The Staff Hearing Officer finds that the injured worker voluntarily retired prior to filing for permanent total disability; therefore, the injured worker is not eligible for permanent total disability benefits. *Page 10 
 In arriving at her conclusion the Staff Hearing Officer has considered the history of disability in this claim. The Staff Hearing Officer finds that no temporary total disability benefits have ever been paid in the above captioned claims. The injured worker requested temporary total disability based on the allowed psychological conditions. The injured worker's request was denied based upon Dr. Ferrell's 1/13/2004 report which found that the allowed psychological condition had reached maximum medical improvement, and did not prevent the injured worker from returning to her former position of employment. The injured worker appealed the denial of temporary total compensation to court; however, the Commission's decision was affirmed.
 At this hearing the injured worker stated that she was last employed in October of 2002. The injured worker also stated at the time when she was last employed she was actually hospitalized for an unknown blood disorder. Despite the injured worker's claim that she has physical impairments as a result of the allowed conditions in this claim, she never requested payment of temporary total disability because of the allowed physical conditions. In addition, there is no medical evidence in file which shows that the injured worker was disabled because of the allowed conditions when she ceased working in October of 2002. The Staff Hearing Officer is aware that the injured worker wrote a note to the employer indicating she was retiring because she was physically unable to work. However, the Staff Hearing Officer does not find the injured worker's self-proclaimed inability to work because of the allowed conditions to be persuasive. The Staff Hearing Officer notes that the injured worker's contention is unsupported by any medical evidence in this file.
 Pursuant to State ex rel. Chrysler Corp. v. Industrial Commission, 62 Ohio St.3d 193 (1991), the Staff [H]earing Officer finds that a retirement taken for reasons unrelated to an allowed workers' compensation injury prior to filing for permanent total disability is classified as a voluntary retirement; and it precludes receipt of a permanent total disability award for the work-related injuries. In this case[,] the injured worker has not produced evidence that she was disabled because of the allowed conditions at the time she took her retirement. In fact, on the day that she last worked, *Page 11 
the injured worker was hospitalized for a blood disorder that was in no way connected to her work. Accordingly, the Staff Hearing Officer finds that the injured worker took a voluntary retirement; and therefore, she is not eligible for permanent total disability benefits.
 {¶ 22} 17. On September 27, 2006, relator, Grace Bartley, filed this mandamus action.
Conclusions of Law: {¶ 23} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 24} In State ex rel. Chrysler Corp. v. Indus. Comm. (1991),62 Ohio St.3d 193, 195-196, the court states:
 * * * We have not previously addressed the effect of retirement upon a claimant's eligibility for permanent total disability compensation, having limited earlier discussions to a retired claimant's eligibility for impaired earning capacity or temporary total disability compensation. Upon review, we find that the principles espoused with regard to the latter are equally applicable here.
 "Temporary total disability" is the inability to return to the former position of employment due to industrial injury. State, ex rel. Ramirez, v. Indus. Comm. (1982), 69 Ohio St.2d 630, * * * syllabus. A claimant who retires for reasons unrelated to his or her injury cannot receive temporary total disability compensation since it is the claimant's own action, not the industrial injury, that prevents a return to the former position of employment. State, ex rel. Rockwell Internatl., v. Indus. Comm. (1988), 40 Ohio St.3d 44[.] * * *
 "Permanent total disability," on the other hand, is the state of being unfit for sustained remunerative employment due to industrial injury. State, ex rel. Jennings, v. Indus. Comm. (1982), 1 Ohio St.3d 101[.] * * * "Sustained remunerative employment" necessarily encompasses "former position of employment." It would therefore be inconsistent to state that *Page 12 
retirement would not prevent an award of permanent total disability benefits but would preclude temporary total disability compensation, particularly when the criterion for temporary total disability is much less demanding than that of permanent total disability. Accordingly, the principles set forth in Rockwell control.
 {¶ 25} Three years later, in State ex rel. Baker Material HandlingCorp. v. Indus. Comm. (1994), 69 Ohio St.3d 202, paragraphs two and three of the syllabus state:
 2. An employee who retires prior to becoming permanently and totally disabled is precluded from eligibility for permanent total disability compensation only if the retirement is voluntary and constitutes an abandonment of the entire job market. * * *
 3. An employee who retires subsequent to becoming permanently and totally disabled is not precluded from eligibility for permanent total disability compensation regardless of the nature or extent of the retirement. * * *
 {¶ 26} In State ex rel. Staton v. Indus. Comm. (2001),91 Ohio St.3d 407, the court upheld the commission's decision denying TTD compensation on grounds that the claimant's retirement from his former position of employment was due solely to a nonallowed condition. The Staton court states:
 * * * [T]he claimant who vacates the work force for non-injury reasons not related to the allowed condition and who later alleges an inability to return to the former position of employment cannot get TTD. This, of course, makes sense. One cannot credibly allege the loss of wages for which TTD is meant to compensate when the practical possibility of employment no longer exists.
Id. at 410.
 {¶ 27} Here, the commission, through its SHO, determined that relator's retirement in late 2002 was not motivated by any allowed condition of the claim. Even *Page 13 
though relator's October 14, 2002 statement asserts that she is retiring due to her "injured back" and "broken foot," apparent references to the allowed industrial injuries, the commission was not persuaded that the allowed conditions were the actual motivation for the retirement. The commission explained that relator was hospitalized for a blood disorder at the time she retired and that the blood disorder is not related to her industrial injuries.
 {¶ 28} It is the commission that weighs the evidence before it. It was well within the commission's fact-finding discretion to determine that relator's October 14, 2002 statement lacked credibility as to the stated reason for the retirement. The commission explained its determination and cited to evidence supporting it.
 {¶ 29} The magistrate does note that the SHO's order of May 3, 2006 finds that relator "took a voluntary retirement," but does not directly find that the retirement constitutes an abandonment of the entire job market. However, that is not fatal to the commission's decision under the circumstances here.
 {¶ 30} The SHO's order of May 3, 2006 appropriately observes that no TTD compensation has ever been paid in the claim and that relator's request for TTD compensation based upon her psychological conditions was denied by the commission based upon Dr. Ferrell's January 13, 2004 report.
 {¶ 31} Obviously, if relator was able to return to her former position of employment in January 2004 as Dr. Ferrell and the commission found, that is evidence of workforce abandonment because relator has never claimed that she worked after October 2002. Thus, the commission's finding that relator took a voluntary retirement is *Page 14 
sufficient to support a denial of PTD compensation. See State ex rel.McAtee v. Indus. Comm. (1996), 76 Ohio St.3d 648 (commission's failure to explicitly address workforce abandonment was not fatal to the order).
 {¶ 32} In her reply brief, citing State ex rel. Cliff v. AuburndaleCo., 111 Ohio St.3d 490, 2006-Ohio-6111, relator argues that the commission has issued conflicting orders. Apparently, relator would argue here that the SHO's order of July 22, 2004 conflicts with the SHO's order of May 3, 2006, because the former denies TTD compensation without mention of the retirement, while the latter denies PTD compensation based upon a voluntary retirement.
 {¶ 33} Relator's reliance upon Cliff is misplaced. In Cliff, the commission denied TTD compensation upon finding that James W. Cliff had voluntarily abandoned the workforce. Later, the commission awarded Cliff PTD compensation. The Cliff court states that in awarding PTD compensation, the commission "implicitly declared that Cliff's workforce departure had been involuntary." Id. at ¶ 6. (Emphasis sic.) Because the court was unable to proceed further due to this conflict, it returned the cause to the commission for further consideration and an amended order.
 {¶ 34} Here, there is no conflict between the SHO's orders of July 22, 2004 and May 3, 2006. The SHO's order of July 22, 2004 denies TTD compensation based upon Dr. Ferrell's opinion that relator's psychological conditions do not prevent her return to her former position of employment, and that the psychological conditions are at MMI. The absence of any mention of the retirement in the SHO's order of July 22, 2004 is not an *Page 15 
implicit declaration regarding the retirement. Thus, there can be no conflict when the SHO's order of May 3, 2006 does address the retirement issue.
 {¶ 35} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1